WOLD, Plaintiff in error, v. STATE, Defendant in error.

*No. State 99. Argued January 4, 1973.—Decided February 27, 1973.*
(Also reported in 204 N. W. 2d 482.)

For the plaintiff in error there was a brief by *James A. Drill* and *Doar, Drill, Norman & Bakke,* all of New Richmond, and oral argument by *Thomas C. Bell* of New Richmond.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J. The child testified that Wold took her walking with a little boy and a dog in a field behind a trailer court where she lived and committed acts which would constitute taking indecent liberties. The fact she was molested was substantiated by circumstantial evidence. A construction worker testified he saw Wold walking with a boy and a dog in the vicinity and at the time involved. The clothing of the child, her report to her mother as to what had happened, and the doctor's examination all proved the child was molested. The child identified Wold by his residence in the trailer court as the person who took indecent liberties with her.

Wold first contends the evidence presented at the preliminary hearing was insufficient to establish probable cause without the child's testimony, which was admitted through error. We do not reach the merits of this argument because Wold neither moved for a dismissal nor sought any other remedy prior to pleading not guilty to the information. Failure to advance the contention of lack of probable cause constitutes a waiver of the objection. Logically and in the interest of orderly procedure of the criminal process, there is no purpose in going to trial if there is no probable cause;[1] this reasoning is the basis of statutory regulations of analogous situations. Under sec. 955.18 (1), Stats. 1967 (now sec. 971.02 (1)), an information in a felony case is not to be filed until the defendant has had a preliminary examination, with some exceptions not relevant

[1] The purpose behind the preliminary examination is to protect the accused from hasty, improvident, or malicious prosecution and to determine whether there is a substantial basis for prosecution and further denial of his right to liberty. *Johns v. State* (1961), 14 Wis. 2d 119, 109 N. W. 2d 490; *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557, certiorari denied, 390 U. S. 959, 88 Sup. Ct. 1056, 19 L. Ed. 2d 1155; *State ex rel. Klinkiewicz v. Duffy* (1967), 35 Wis. 2d 369, 151 N. W. 2d 63; *State ex rel. Welch v. Waukesha County Circuit Court* (1971), 52 Wis. 2d 221, 189 N. W. 2d 417.

here. Upon good cause the court may remand for a preliminary hearing if a motion is made pursuant to sec. 955.09, Stats. 1967.[2] One of the good causes stated in the section is the denial by the defendant that probable cause exists to hold him for trial when the preliminary examination has been waived. However, to raise the objection, sec. 955.09 (2) requires a defense or an objection which is capable of determination without the trial of the general issue to be raised before the trial by motion. Similarly, an objection to the sufficiency of a preliminary examination should be made by motion at least prior to pleading to the information. Furthermore, this objection is similar to defects in a preliminary examination which have been held waived if not raised prior to the plea to the information. *See: Godard v. State* (1972), 55 Wis. 2d 189, 197 N. W. 2d 811; *Crummel v. State* (1970), 46 Wis. 2d 348, 174 N. W. 2d 517; *Flowers v. State* (1969), 43 Wis. 2d 352, 168 N. W. 2d 843; *Logan v. State* (1969), 43 Wis. 2d 128, 168 N. W. 2d 171.

Wold contends that prior to the trial he moved for discovery of the state's evidence and the district attorney volunteered to provide all crime laboratory reports. Although the motion and order granting discovery do not appear in the record, the fact the district attorney volunteered to provide the reports is admitted. The reports which were given to the defendant showed no incriminating evidence, but at the trial an analyst with the state crime laboratory testified she had found a seminal stain on Wold's underwear. After cross-examining this witness, defense counsel moved to strike

---

[2] This section was repealed and re-enacted with substantial changes (none of which is relevant here) by the Laws of 1969, ch. 255, sec. 63, now sec. 971.31, Stats. Under sec. 971.05 (4), a defendant is required upon arraignment to plead unless he has filed a motion under sec. 971.31 which requires determination before the entry of the plea.

her testimony on the ground no reference to this matter appeared in the reports submitted. The motion was denied and Wold claims this is error. The state argues Wold waived any right to challenge this testimony by cross-examining the witness. We believe Wold was entitled to cross-examine the analyst to determine why the matter was not in the laboratory reports given him, and such examination did not amount to a waiver of his right to challenge this evidence by a motion to strike.

The issue presented does not involve a wilful suppression of evidence by the prosecution because the district attorney was unaware of the crime laboratory test which was made subsequent to those upon which the reports he gave to the defendant were based. Apparently the district attorney relied on the reports given the defendant and did not know of the discovery of the stain on the underwear until the analyst testified as to its existence.

Prior to the recent Criminal Code revision, this court had repeatedly rejected judicial adoption of a discovery rule in criminal law. *State v. Watkins* (1968), 40 Wis. 2d 398, 162 N. W. 2d 48; *Ramer v. State* (1968), 40 Wis. 2d 79, 161 N. W. 2d 209; *State v. Miller* (1967), 35 Wis. 2d 454, 151 N. W. 2d 157; *State ex rel. Byrne v. Circuit Court* (1962), 16 Wis. 2d 197, 114 N. W. 2d 114; *State v. Herman* (1935), 219 Wis. 267, 262 N. W. 718; *Santry v. State* (1886), 67 Wis. 65, 30 N. W. 226. Although, prior to the new Criminal Code, there was no "clear legal right" to discovery so that mandamus would lie for failure to order production, the question of whether a discovery motion would be granted was a matter of discretion with the trial court. *See State ex rel. Johnson v. County Court* (1968), 41 Wis. 2d 188, 163 N. W. 2d 6; *see also: Woodhull v. State* (1969), 43 Wis. 2d 202, 168 N. W. 2d 281; *State v. Miller, supra,* at page 478. The new Criminal Code, which was not in effect at the time of the trial in this case, grants a

limited discovery to the defendant as a matter of right and creates a duty of continual disclosure. Sec. 971.23, Stats.

The question presented is whether evidence allegedly unknown to the state prior to trial and not disclosed to the defense pursuant to an agreement to disclose or an order of discovery should be excluded. We think the court should have excluded the testimony. In the preparation of the case, the district attorney should have discovered if later tests were made and if so, then, in keeping with his promise to disclose, the tests should have been given to the defendant. Under the American Bar Association Project on Standards for Criminal Justice, *Standards Relating to The Prosecution Function and The Defense Function* (Approved Draft), p. 100, sec. 3.11 (c),[3] the prosecutor may not avoid pursuit of any evidence. The Commentary at page 102 makes clear it is the prosecutor's duty to acquire *all* relevant evidence. The duty rests upon the prosecution to obtain *all* evidence in the possession of investigative agencies of the state. *See* American Bar Association Project on Standards for Criminal Justice, *Standards Relating to Discovery and Procedure Before Trial* (Approved Draft), p. 14, sec. 2.1 (d) [4] and p. 78, sec. 2.2 (c).[5] The

---

[3] "3.11 **Disclosure of evidence by the prosecutor.** . . .

"(c) It is unprofessional conduct for a prosecutor intentionally to avoid pursuit of evidence because he believes it will damage the prosecution's case or aid the accused."

[4] "2.1 **Prosecutor's obligations.** . . .

"(d) The prosecuting attorney's obligations under this section extend to material and information in the possession or control of members of his staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office."

[5] "2.2 **Prosecutor's performance of obligations.** . . .

"(c) The prosecuting attorney should ensure that a flow of information is maintained between the various investigative personnel and his office sufficient to place within his possession

test of whether evidence should be disclosed is not whether in fact the prosecutor knows of its existence but, rather, whether by the exercise of due diligence he should have discovered it.[6] Here, the prosecutor by his own statement assumed a duty to disclose scientific reports. His duty is to seek to know of the existence of such reports which he should disclose to the defense especially when scientific reports were requested.

If sec. 971.23 (7), Stats.,[7] were applicable, the failure of adequate preparation for trial should not con-

---

or control all material and information relevant to the accused and the offense charged."

[6] The drafters of the *Standards Relating to Discovery and Procedure Before Trial* recognized this in the Commentary at page 81:

"Subsection (c) is designed to deal with the problem of the extent to which a prosecutor can be expected to know of the existence of material or information which he is obligated to disclose. This is sometimes handled by describing an item as one '. . . the existence of which is known, or by the exercise of due diligence may become known . . .' to the prosecutor. . . . In discharging his duties he should know, or seek to know, of the existence of material or information at least equal to that which he should disclose to the defense. Accordingly the standard is formulated in terms of what the prosecutor should do in any event: ensure the flow of information to him from investigative personnel so that he will have possession or control of all material or information relevant to the accused and the offense charged."

[7] "971.23 Discovery and inspection. . . .

"(7) CONTINUING DUTY TO DISCLOSE; FAILURE TO COMPLY. If, subsequent to compliance with a requirement of this section, and prior to or during trial, a party discovers additional material or the names of additional witnesses requested which are subject to discovery, inspection or production hereunder, he shall promptly notify the other party of the existence of the additional material or names. The court shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply. The court may in appropriate cases grant the opposing party a recess or a continuance." *Cf.*, ABA Project on Standards for Criminal Justice, *Standards Relating to Discovery and Procedure Before Trial* (Approved Draft), p. 99, sec. 4.2.

stitute "good cause . . . shown for failure to comply" when it misleads the defense. If there is to be pretrial discovery, broad or limited, in criminal cases, defense counsel should be able to rely upon evidence as disclosed by the state; otherwise, the purpose of discovery is frustrated and more injustice is done than if no discovery were allowed. Recognizing the strong need to avoid surprise of the defense in the area of scientific evidence, the drafters of the ABA standards stated:

"The need for full and fair disclosure is especially apparent with respect to scientific proof and the testimony of experts. This sort of evidence is practically impossible for the adversary to test or rebut at trial without an advance opportunity to examine it closely. . . ." American Bar Association Project on Standards for Criminal Justice, *Standards Relating to Discovery and Procedure Before Trial* (Approved Draft), Commentary at page 66.

Perhaps not all evidence which should be disclosed to the defendant need be excluded. The harm may be slight and avoided by a short adjournment to allow the defendant to investigate or acquire rebutting evidence. The penalty for breach of disclosure should fit the nature of the proffered evidence and remove any harmful effect on the defendant.

In the instant case, the prosecutor could have discovered the later test through a conference with his witnesses, and the evidence was of such a nature it should not have been admitted. However, this holding does not necessarily require a reversal, as will be discussed later.

At trial, the state crime laboratory analyst also testified that seminal stains were found on a handkerchief taken from the pocket of trousers seized by the police from a clothes hamper in Wold's home on the day following the alleged assault. It was admitted Wold was not wearing the trousers at the time of the crime.

Nothing in the record indicates he used the handkerchief on the critical date, although the child testified Wold used a "white hankie" to wipe her. Wold contends it was error to admit the handkerchief into evidence because no foundation was laid. He claims the admission of the trousers in evidence did not include the handkerchief which was in them at the time of seizure.

Generally, in the admission of articles associated with an offense, some connection or link between the article, the defendant, and the crime must be established. In *Zdiarstek v. State* (1972), 53 Wis. 2d 420, 192 N. W. 2d 833, a handgun and jacket admitted into evidence closely resembled those used in the crime. In *Howland v. State* (1971), 51 Wis. 2d 162, 186 N. W. 2d 319, the court stated that positive identification of the proffered objects is not essential to admission but also noted that if the victim had been unable to identify the objects as the ones worn by the defendant, their admission would have been error for lack of foundation. In *State v. Spring* (1970), 48 Wis. 2d 333, 179 N. W. 2d 841, a cashbox resembling one stolen and boots of the type worn by the accused were held admissible. In *Roszczyniala v. State* (1905), 125 Wis. 414, 104 N. W. 113, trousers with bloodstains and with stripes similar to trousers witnesses saw the accused wearing on the date of the offense were held admissible. While the connection between the handkerchief and the crime is not as strong as the connection in some cases cited, we think it was sufficient and thus there was no error in admitting the handkerchief in evidence. What weight should be given to the evidence was for the jury to decide.

Prior to trial a *Goodchild* [8] hearing was held to determine the voluntariness of certain statements made

[8] *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753, certiorari denied, 384 U. S. 1017, 86 Sup. Ct. 1941, 16 L Ed. 2d 1039.

by Wold while in custody after he was given a *Miranda* [9] warning and after counsel had been appointed. The trial court found the statements made to an Officer Martin on November 14, 1969, to have been involuntary or at least the result of poor police practice and granted the motion to suppress them. At trial, Wold took the stand on his own behalf. On cross-examination over the objection of the defense, Wold was questioned as to these statements. After he denied making them, the state called Officer Martin who testified to the statements as made by Wold while in custody. Wold argues it was error for the court to use statements for the purpose of impeachment which had been found inadmissible as direct evidence. The state argues that any error which might have been committed was harmless.

While the record is not entirely clear, the court stated the evidence was inadmissible because police should not have interrogated Wold outside the presence of Wold's counsel. The police knew Wold had been given the *Miranda* warning, had counsel, and had been in custody for eight days. The court called this poor police practice and at another point said the statements were made involuntarily. The use of the terms "voluntary" and "involuntary" in the cases in relation to admissibility of confessions and statements has led to much confusion. At common law the term "involuntary" meant made against one's will and, therefore, untrustworthy. *See* 3 Wigmore, *Evidence,* Confessions (rev. ed. 1970), p. 350, sec. 826. The common-law connotation of the term cannot be accepted as its only modern meaning. Many confessions and statements which are called involuntary are excluded for reasons other than their unreliability. As stated in Wigmore at page 351, "Though the exclusionary rule is expressed in terms of involuntariness, the term 'involuntary' often connotes some-

---

[9] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

thing other than simply 'unreliable.' As Professor Beisel puts it: '[T]he Supreme Court must be using the terms "coercion," "voluntary" and "involuntary" in a sense different from that used in life's ordinary, everyday affairs. These terms appear to be used in what is called a legal sense. Within the legal system, that is, the terms are being given a meaning by the Supreme Court unique to the purposes of that system.'" Since the record is not clear whether the police used any trickery or coercion, we must take the facts to be that the police obtained statements from Wold in disregard of his constitutional rights against self-incrimination and to assistance of counsel, but these grounds do not go to the trustworthiness of the statements.

The question is whether these statements can be used for impeachment purposes. Several of these statements seem to be innocuous or at least go to issues other than directly to the guilt issue. Wold stated in response to a question by the police that he wore black pants and a red shirt on the day in question, that the girl was wearing a green coat, that he went out walking with his boy and the girl and the dog, and that he last saw the girl about 1:50 p. m. by his trailer. The more damaging statements were his responses when told the prosecution had physical evidence against him which was at the crime lab: "Well, I am safe there because you did not get any clothes I had on me that day," and "You know I was out in that field because you know the guy that saw me."

As early as 1894 in *Shephard v. State,* 88 Wis. 185, 59 N. W. 449, this court held that a confession which was obtained by the police through extortion could not be used for impeachment. The court said it was unfair to the accused to use such evidence for impeachment when it was inadmissible in chief. This language must be read in the context of the facts. *Shephard* was fol-

lowed in *Gaertner v. State* (1967), 35 Wis. 2d 159, 150 N. W. 2d 370. We do not read *Shephard* to mean every statement or confession inadmissible in chief is necessarily inadmissible for impeachment purposes. A statement or confession which is obtained by coercion or extortion is not considered trustworthy and is inadmissible for that reason. Four years after the *Gaertner Case* was decided, the United States Supreme Court decided *Harris v. New York* (1971), 401 U. S. 222, 91 Sup. Ct. 643, 28 L. Ed. 2d 1,[10] in which it was held the federal constitution did not prevent the use for impeachment of testimony which was inadmissible because of violation of the *Miranda* rule. In *Harris* the supreme court said the failure to comply with *Miranda* was not enough to destroy the reliability or the trustworthiness of the statements and evidence inadmissible in chief was not barred for all purposes provided "that the trustworthiness of the evidence satisfies legal standards" and further that the statements made to the police in that case were not "coerced or involuntary." 401 U. S. at 224. The test for excluding testimony for impeachment purposes is untrustworthiness, not necessarily its exclusion in chief.[11] When a court conducts

[10] The *Harris Case* was used in *Ameen v. State* (1971), 51 Wis. 2d 175, 186 N. W. 2d 206, in an *a fortiori* argument to justify the use of testimony for impeachment purposes.

[11] This test is not expressly stated in the proposed Wisconsin Rules of Evidence. Sec. 906.13 (2), Stats., provides:

"906.13 **Prior statements of witnesses.** . . .

"(2) EXTRINSIC EVIDENCE OF PRIOR INCONSISTENT STATEMENT OF A WITNESS. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless: (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or (b) The witness has not been excused from giving further testimony in the action; or (c) The interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in s. 908.01 (4) (b)."

It would seem that if a confession or inculpatory statement is trustworthy, it should be admitted in the interest of justice.

a hearing to determine the admissibility of evidence in chief, it should make a determination for the use of such evidence, both in chief and for impeachment, and expressly make a finding concerning the trust-worthiness as well as such other grounds for admission or exclusion as the evidence permits. However, evidence excluded on direct should not be used for impeachment unless the accused takes the stand and testifies to matters directly contrary to what is in the excluded statement. The foundation for the use of the impeaching statements must be found in prior testimony. We hold it was not error to admit the statements made by Wold to Officer Martin.

Wold argues the testimony as to the second laboratory test on Wold's underwear, erroneously admitted, was not harmless error. The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. *See Harrington v. California* (1969), 395 U. S. 250, 89 Sup. Ct. 1726, 23 L. Ed. 2d 284. This test is based on reasonable probabilities. Although the court in *Fahy v. Connecticut* (1963), 375 U. S. 85, 84 Sup. Ct. 229, 11 L. Ed. 2d 171, had talked about reasonable possibilities, *Harrington* shows the court no longer in fact uses that standard.[12] A possibility test is the next

---

[12] In *Fahy,* the court stated the harmless error test as being one of determining "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Four years later, in *Chapman v. California* (1967), 386 U. S. 18, 87 Sup. Ct. 824, 17 L. Ed. 2d 705, the court believed it was adhering to the *Fahy* test when it held "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." In the words of the court at page 24:

thing to automatic reversal. In determining guilt "beyond a reasonable doubt," the human mind should not work on possibilities, but on reasonable probabilities.[13]

This test is one of degree of harm. In cases of confessions and right to trial by jury, effective assistance of counsel, it has been generally held the harm is such as to require automatic reversal. The effect of any erroneously admitted statement, which carries no reversal as a matter of law, must be realistically evaluated in the context of the case. Here, a five-year-old child could not imagine or fabricate a story of what Wold did

---

"There is little, if any, difference between our statement in *Fahy v. Connecticut* about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."

Taking these two cases together, it seems the court is saying an error cannot be deemed harmless beyond a reasonable doubt where there is a reasonable possibility that the evidence complained of might have contributed to the conviction.

However, two years after *Chapman*, the court decided *Harrington*, wherein a violation of the *Bruton* rule was deemed harmless error because "the case against Harrington was so overwhelming that we conclude that this violation of *Bruton* was harmless beyond a reasonable doubt." Although the court expressly noted it was neither departing from *Chapman* nor diluting that case, it rejected an argument that the court should reverse if it could imagine a single juror whose mind *might* have been influenced by the confessions. Instead, the court stated it must look at the *probable* impact of the confessions on the average jury. Thus it appears the court, in fact, exchanged the "possibility" test of *Fahy* for one based on "probability."

[13] For a discussion of the rationale behind various harmless-error rules and standards, *see* R. Traynor, *The Riddle of Harmless Error* (1970). *See also Gaertner v. State, supra; Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557, certiorari denied, 390 U. S. 959, 88 Sup. Ct. 1056, 19 L. Ed. 2d 1155; *Pulaski v. State* (1964), 24 Wis. 2d 450, 129 N. W. 2d 204, certiorari denied, 379 U. S. 862, 85 Sup. Ct. 124, 13 L. Ed. 2d 65, certiorari denied, 380 U. S. 919, 85 Sup. Ct. 913, 13 L. Ed. 2d 803.

to her. The wildest imagination of any five-year-old child could not invent such a tale, nor could she be mistaken. Her story was substantiated by bloodstains on her clothing, by a description to her mother of the acts, and by a doctor's examination which can leave no reasonable doubt that the child was sexually molested. Beyond this, a disinterested witness saw Wold and the child together with a boy and a dog in the vicinity at the time and place in question, and Wold admits being there. The five-year-old child identified Wold as the man who assaulted her. Without the consideration of the laboratory test showing stained underwear, this evidence would be sufficient in the minds of any jury to convict Wold beyond a reasonable doubt. We conclude from our independent consideration of the admissible evidence that no reasonable jury considering only such evidence could have acquitted Wold.

*By the Court.*—Judgment affirmed.