STATE, Respondent, v. OLIVER, Appellant.

No. 76-143-CR. Submitted on briefs April 6, 1978.—Decided June 30, 1978.
(Also reported in 267 N.W.2d 333.)

For the appellant the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Alvin E. Whitaker,* assistant state public defender.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Edward S. Marion,* assistant attorney general.

CALLOW, J. The defendant, Craig Oliver, appeals from the judgment of conviction for the armed robbery of B's Pizza and from the trial court order denying his postconviction motions.

On February 5, 1976, at about 9:55 P.M., two men entered B's Pizza, 609 14th Street, Racine, and robbed it of approximately $429.35. At the trial John T. Greenwood testified that he was employed at B's Pizza on the night of the robbery when the two men entered and ordered a pizza. After giving the order to Linda Johnson, the cook, Greenwood turned around and found himself facing a gun held by the shorter of the two men. The two employees were ordered to lie on the floor face down. Greenwood, however, was asked to stand up when the robbers could not open the cash register drawer. Greenwood testified that, within seconds after the robbery, a person he knows as Sam Hernandez walked into the store and asked for change. When Greenwood told him the store had just been robbed, he said "forget it then" and walked out.

Greenwood testified that during the robbery he did not recognize either of the two men. After the robbery, he gave the police a general description of their appearance. Later that evening and the following morning he viewed numerous photographs and picked several of the men pictured as similar to the robbers. He did not, however,

make a positive identification. On February 17, 1976, Greenwood viewed a line-up and identified the defendant as one of the persons who committed the robbery. Sam Hernandez and Linda Johnson were also at the line-up, but failed to recognize anyone. At the trial Greenwood also positively identified the defendant as one of the robbers. He testified that after the line-up Sam Hernandez reminded him that he and Greenwood had gone to junior high school with the defendant, and that he then remembered the defendant from Starbuck Junior High School.

Linda Johnson, the cook, also testified. Though she could not make a positive identification of the defendant as one of the robbers, she stated that she "could identify the person that I remember [he] looks like," and she identified that person as the defendant.

Sam Hernandez testified that he knew both the defendant and Greenwood from junior high school. He testified that he was in the middle of the street going to B's Pizza to get cigarettes when he saw two men running around the corner of the building. He testified that he did not pay much attention to the men and could not describe them, except to say that both were black, one was tall and one was short. He testified that he did not see the short one well enough to recognize him, although he also testified that if he saw someone he knew he would have recognized him. He did not recognize the short man as Craig Oliver and he did not identify Craig Oliver as the robber at the line-up.

Officer Kenneth Kaebisch testified, based on his recollection of the events and his police report, that eight days after the robbery he responded to a disturbance call at B's Pizza. He testified that Greenwood told him that the person who had been involved in the disturbance, later identified as Adrian Walton, was the one whom he believed to be one of the robbers. Greenwood denied making this identification.

Donna Burdick, a co-owner of B's Pizza, testified that she was told by a reliable source, who was never identified, that the defendant was one of the robbers. However, she also testified that she never told either Johnson or Greenwood that Craig Oliver was involved.

The defense cites as error a trial court ruling that certain in-custody statements made by the defendant to the police would be admissible at trial if they were used to impeach the defendant's credibility. The defense argues that the court's ruling on the possible admissibility of these statements if they were offered for purposes of impeaching the defendant's direct testimony deterred the defendant from taking the stand in his own defense and thus denied him an opportunity to make a full presentation of his case.

The statements at issue were made to Detective Shelby in an interrogation room in the county jail without the benefit of a pre-interview *Miranda* warning. In an effort to solve an unrelated robbery, Detective Shelby interrogated the defendant. At the hearing on the admissibility of the statements, Detective Shelby testified that during the interrogation he told the defendant that it looked like he was going to be convicted on both the armed robbery of B's Pizza, with which he was charged, and the heavily publicized robbery of Van Gemert's Foods. According to Detective Shelby, the defendant stated that he had asked his attorney if he could plead guilty to the pizzeria charge, but his attorney replied that "there was still a chance for him on that one." The defendant testified that he told the detective he wanted to plead guilty to both charges because he felt he would not get a fair trial because of the publicity his case had received and that he was tired of sitting in jail.

The state and the defense agree that these statements made without the benefit of *Miranda* warnings may not be used in the prosecution's case in chief. However, state-

ments of the defendant made without the appropriate *Miranda* warnings, though inadmissible to the prosecution's case in chief, may be used to impeach the defendant's credibility in certain circumstances. *Harris v. New York*, 401 U.S. 222 (1971). In *Harris*, the Supreme Court held that such statements may be used for the limited purpose of impeaching the defendant's credibility if they contradict the defendant's direct testimony at trial: "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." 401 U.S. at 226. Similarly, in *Wold v. State*, 57 Wis.2d 344, 356, 204 N.W.2d 482 (1973), we held "[e]vidence excluded on direct should not be used for impeachment unless the accused takes the stand and testifies to matters directly contrary to what is in the excluded statement. The foundation for the use of the impeaching statements must be found in prior testimony." We further stated that "The test for excluding testimony for impeachment purposes is untrustworthiness, not necessarily its exclusions in chief." *Id.* at 355.

In the present case, the trial court held a *Goodchild* hearing on the statements made by the defendant to Detective Shelby. After the hearing the state conceded the absence of *Miranda* warnings made the statement of the defendant inadmissible in the state's case in chief. However, the court concluded the statements were the voluntary product of the defendant's free will and were not coerced. The court said "[i]f the defendant takes the stand and there is a time when that statement can be used to impeach him, [the state] may ask the question."

The defense, by omitting any reference on direct examination to the subject of his plea of not guilty in this case, would have avoided the exposure to impeachment by use of these statements on cross-examination, for

*Wold* makes clear that the foundation for the use of the statements for impeachment must be found in the defendant's contrary testimony on direct examination. The statement to Detective Shelby would not be available for use on cross-examination if the subject of his plea of not guilty was not raised on direct. Under the rule of *Harris* and *Wold* the defendant is not free to commit perjury on the stand on subjects which the state knows to be untrue. The rule of *Harris* allows the state to use the otherwise inadmissible statements to expose a lie or an inconsistent statement the defendant makes on direct examination. Except to deter the defendant against perjury, *Harris* does not deter the defendant from taking the stand in his own defense. The record here does not support the conclusion that the application of *Harris* inhibited the defense from making a full presentation of the case. We hold that the court did not err in ruling the defendant's comments concerning a plea of guilty could under appropriate circumstances be used for impeachment.[1]

The second issue on appeal is the sufficiency of the evidence to support a guilty verdict. The identification of Craig Oliver as one of the two armed robbers of B's Pizza rested primarily on the testimony of John T. Greenwood, one of the employees of B's Pizza. Greenwood testified that he was positive that Craig Oliver was one of the two robbers and had identified him at a line-up on February 17, 1976. Although Greenwood had known the defendant in junior high school several years earlier, he did not identify either of the robbers immediately after

[1] The defendant cites Fed. R. Evid. 410 as authority for the exclusion of his statement concerning a plea of guilty made to Detective Shelby. Sec. 904.10, Stats., is significantly different from the federal rule. The federal rule excludes all evidence of a plea of guilty, while the Wisconsin rule excludes only plea evidence offered to the court or the prosecuting attorney. Therefore, the defendant's argument based on the federal rule is without merit.

the robbery when interviewed by the police. Greenwood denied identifying Adrian Walton as the robber during the February 13 disturbance investigation, though he acknowledged that he told the police Walton might have been one of the robbers. This was evidence for the jury to consider in weighing the credibility of Greenwood as a witness. The test for this court to apply on appeal is whether "the trier of facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." *Lock v. State,* 31 Wis.2d 100, 114–15, 142 N.W.2d 183 (1966). "[I]t is not necessary that this court be convinced of the defendant's guilt but only that the court is satisfied the jury acting reasonably could be so convinced." *Taylor v. State,* 74 Wis.2d 255, 265, 246 N.W.2d 516 (1979).

In the present case, the jury was entitled to believe Greenwood's positive identification. Greenwood identified the defendant both in court and at a police line-up. Although the other two witnesses, Linda Johnson and Samuel Hernandez, could not identify the defendant as one of the robbers, the jury was entitled to believe Greenwood's testimony and convict the defendant on the basis of Greenwood's testimony alone. Linda Johnson testified that, although she could not identify the defendant as one of the robbers, his appearance was not unlike the appearance of one of the robbers of B's Pizza that night. Although Samuel Hernandez testified that he knew the defendant and did not believe him to be one of the robbers because he would have recognized him, Hernandez also testified that he did not get a very good look at either of the robbers because he saw them only as they ran. The jury may consider conflicting testimony and believe the testimony they find most credible. John Greenwood's testimony is not incredible, since this court has said that

incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts. *Simos v. State,* 53 Wis.2d 493, 192 N.W.2d 877 (1972) ; *Chapman v. State,* 69 Wis.2d 581, 230 N.W. 2d 824 (1975). It cannot be said that Greenwood's identification of Craig Oliver is inconsistent with nature or physical or conceded facts.

The third issue presented by the appeal is whether the imposition of a twenty-year sentence was excessive in this case. We hold that the trial court did not abuse its discretion in sentencing the defendant. Our court "adheres to a strong policy against interference with the trial court's discretion in passing sentence. It is presumed that the trial court acted reasonably and the defendant must show some unreasonable or unjustifiable basis in the record for the sentence." *Taylor v. State, supra,* at 267. *See also: State v. Killory,* 73 Wis.2d 400, 243 N.W.2d 475 (1976). The court will only modify a sentence when an abuse of discretion clearly appears. *Taylor v. State, supra,* at 267. *McCleary v. State,* 49 Wis.2d 263, 278, 182 N.W.2d 512 (1971). In *McCleary* the court stated there first "must be evidence that discretion was in fact exercised. Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards." *Id.* at 277.

In this case the judge exercised discretion, as evidenced by his reasoning contained in the record. The trial court noted the merits in defense counsel's statement that prison might be more likely to turn nineteen-year old Craig Oliver into a hardened criminal than to rehabilitate

him, but the Court also stated that Craig was not an appropriate candidate for probation and that the crime of armed robbery was a serious crime which results in intentional trauma to the victims. The court expressed concern for Craig's rehabilitation but reasoned that in Craig's case "rehabilitation has been tried and it was not productive." The court had ample evidence that Craig Oliver did not deserve a light sentence. The record demonstrates that Craig was a repeated offender. Thus we cannot say that the trial court abused discretion in in sentencing Craig Oliver to twenty years.

*By the Court.*—Judgment and order affirmed.