STATE of Wisconsin, Plaintiff-Appellant and
Cross-Respondent,

v.

James Ray MENDOZA, Defendant-Respondent and
Cross-Appellant.†

Supreme Court

*No. 79–1192–CR. Argued April 2, 1980.—Decided May 6, 1980.*
(Also reported in 291 N.W.2d 478).

† Petition to review denied.

For the plaintiff-appellant and cross-respondent the cause was argued by *Jon Peter Genrich,* assistant district attorney for Milwaukee county, with whom on the brief were *E. Michael McCann,* district attorney, and *Thomas J. Hammer,* assistant district attorney.

For the defendant-respondent and cross-appellant there were briefs by *James M. Shellow, Stephen M. Glynn* and *Shellow & Shellow,* attorneys, and *Waring R. Fincke,* of counsel, all of Milwaukee, and oral argument by *Mr. Glynn.*

CONNOR T. HANSEN, J. On November 11, 1974, James Ray Mendoza (hereinafter defendant) was convicted of two counts of first-degree murder in the shooting deaths of two Milwaukee police officers. Trial was held before the Hon. HUGH R. O'CONNELL, Circuit Judge. The defendant appealed, and in *State v. Mendoza,* 80 Wis.2d 122, 258 N.W.2d 260 (1977), this court reversed the conviction and remanded the case for a new trial.

Upon retrial of this action, the defendant filed numerous pretrial motions. In particular, on March 17, 1978, he filed an omnibus motion to suppress in which, among other things, he moved to suppress all statements allegedly made by him, on the grounds that they violated rights guaranteed to him by the Fourth, Fifth and Sixth Amendments to the United States Constitution. The defendant asserted that such statements "were involuntary,

taken in the absence of counsel, taken prior to warnings being given to him sufficient to apprise him that he did not have to make such statements, and were obtained during a time when the defendant was under arrest in violation of rights guaranteed to him by the Fourth Amendment." This motion is almost identical to the defendant's omnibus motion to suppress dated August 26, 1974, which was denied by Judge O'CONNELL following a suppression hearing at the first trial.

At the hearings on the defense motions at retrial, which were conducted on and between March 24, 1978, and April 10, 1978, the state indicated its intention to use during its case-in-chief, or, at least, for purposes of impeachment, two statements made by the defendant following his arrest on July 10, 1974. The rulings of the retrial court relating to the admissibility of these two statements constitute the substantive basis for the instant appeal by the state.

The defendant had told Officer Jackelen of the Milwaukee police department that he had had his hair cut two weeks prior to the date of arrest. The other statement, made to Officer Adamczewski, was to the effect that the defendant had received a head injury as a result of falling down and bumping his head against a parked car while running from the scene of the shootings. The state argues these statements are important to its case on retrial in view of the fact that the defendant on direct examination at the first trial had testified that his mother had cut his hair within about eight hours after the shootings because he knew the police were looking for a tall Mexican with shoulder-length hair. The defendant had also claimed in the first trial that he shot the police officers in self-defense when they were beating on him and that his head was cut as a result of such beating. *See: State v. Mendoza, supra,* at 133–134.

The parties stipulated orally and in writing that portions of the original 1974 record could properly be considered by the retrial court in deciding the defense motions. The following facts were testified to at the suppression hearing held before Judge O'CONNELL in August and September, 1974.

Officer Nicholas Monreal of the Milwaukee police department arrested the defendant at approximately 3:30 p.m. on July 10, 1974, at 1303 South 9th Street in Milwaukee. After informing the defendant that he was under arrest for the murder of two Milwaukee police officers, Monreal informed the defendant that he had a right to remain silent; that anything he said could and would be used against him in court; that he was entitled to an attorney; and that if he could not afford an attorney the court would appoint one for him. After so informing the defendant, Monreal asked him if he understood his rights, to which the defendant answered, "Yes." Monreal then asked the defendant if he understood English, and the answer was "Yes." Monreal then again advised the defendant of these rights in Spanish and asked the defendant in Spanish if he understood. The defendant answered, "Yeah." At the time the defendant was advised of his rights he appeared alert; Monreal did not threaten him, did not make any promises to him and did not use any force on him; and the defendant did not make any requests and was not denied any requests. The defendant was not interrogated at that time, nor did he make any statements. He did not ask to talk to an attorney, did not ask to have an attorney present, and did not state he was represented by Ness Flores or Robert Lerner.

While Monreal was advising the defendant of his rights he saw two lawyers, Ness Flores and Robert Lerner, standing outside the house at 1303 South 9th street. Monreal went outside and told the uniformed

police officers standing outside to remove everyone from the property. Flores told Monreal that he did not want either the defendant or Jesus Fiscal (who was arrested shortly before the defendant was arrested) questioned and that he was representing them. Flores and Lerner both asked to be admitted into the house so that they could talk with the defendant and Fiscal, but they were not allowed inside because the police were conducting their investigation.

At approximately 4 p.m. Monreal put the defendant into the custody of Officers Jackelen and Steinke, who took the defendant outside and escorted him to a squad car. As Monreal was accompanying the officers to the squad car, Lerner told him that he was the attorney for the defendant, that he wanted to be present when the defendant was questioned, and that he did not want the defendant answering any questions. Monreal told Lerner and Flores that the defendant had not been interrogated and that the defendant was being taken to the Police Administration Building and they could talk to the defendant there. Lerner did not make any statements to the defendant. As the defendant was walking to the squad car, he did not stop to confer with Flores or Lerner, he did not ask for an attorney, he did not state that he was represented by Lerner, and he did not ask Lerner to represent him. Flores said words in Spanish to the defendant and Fiscal to the effect that they should say nothing.

The defendant was then taken downtown to the Detective Bureau in the Police Administration Building by Officers Jackelen and Steinke. No one questioned the defendant en route and he did not make any statements. When they arrived at the Detective Bureau the defendant was taken to a conference room where Officers Mattson and Loeffler were present, in addition to Officers Jackelen and Steinke. Jackelen noticed several

strands of hair on the defendant's shirt and so he asked the defendant when he last had his hair cut. The defendant replied, "Two weeks ago." Loeffler then advised the defendant of his rights. Loeffler told the defendant that he did not have to say anything; that anything he did say could and would be used against him in a court of law; that he had a right to an attorney; if he could not afford an attorney, the court would appoint an attorney for him. Loeffler asked the defendant if he understood these rights and the defendant responded, "Yes." Loeffler then questioned the defendant for 5–10 minutes.

The defendant was in the conference room from approximately 4:10 p.m. to 4:20 p.m. During that time no promises were made by anyone to the defendant, no threats were made to him by anyone, no physical force or violence was used on the defendant, and none of his requests were denied. The defendant did not request to have an attorney present, he did not say that he did not want to make a statement or to be questioned, he did not ask to have questioning terminated, and he did not say he was represented by counsel.

Lerner arrived at the Detective Bureau in the Police Administration Building at approximately 4:10 p.m. and told the officer at the front desk that he was the attorney for the defendant and he wanted to talk to District Attorney E. Michael McCann or a detective. Lerner spoke to McCann at about 4:15 p.m. and told him that he did not want the defendant questioned by the police and that he wanted to see the defendant. McCann told Lerner he could not see the defendant until the police completed the booking process. Lerner was finally allowed to talk to the defendant when he was taken before a judge at 7:15 p.m.

At approximately 4:15 p.m. McCann told Lt. Roy Bachman of the Milwaukee police department that he had spoken to an attorney who requested that the in-

terrogation of the defendant cease, and instructed Bachman to stop all questioning of the defendant, if any was occurring. Bachman then told Detective Gordon Adamczewski to order termination of the questioning of the defendant. This was done immediately.

At approximately 5:40 p.m. Detective Adamczewski saw the defendant in the Bureau of Identification room. He looked at the defendant's head, face and neck for any indication of an injury so that he could determine whether the defendant had been involved in a fight. Adamczewski observed blood on the defendant's hair and head and a laceration to his scalp, and then made the comment, "You've got blood on your head." The defendant stated that he had received the injury when he fell down and bumped his head against a parked car while running from the scene of the shootings. No question preceded or followed Adamczewski's statement.

Findings of fact and conclusions of law regarding the admissibility of the statements made by the defendant were issued by Judge O'CONNELL on September 3, 1974. He concluded that the defendant was appropriately advised of his *Miranda* rights twice and understood them, and that, from the totality of the circumstances, the statements by the defendant were voluntarily made, and therefore the statements were admissible in evidence. On April 10, 1978, Judge LANDRY initially adopted the findings of Judge O'CONNELL and denied the motion to suppress the statements. However, an assistant district attorney brought to the court's attention what he perceived to be a problem with the admissibility of the statements under the *Miranda* decision. Referring to the testimony of Officers Monreal and Loeffler as to what rights they had advised the defendant of prior to his statements, the prosecutor pointed out that there was no reference to the defendant's right to have an attorney present during interrogation. Also, there was no reference to the defendant's right to stop questioning at

any time.[1] *See: Micale v. State,* 76 Wis.2d 370, 374, 251 N.W.2d 458 (1977). The state stopped just short of conceding that inadequate *Miranda* warnings had been given to the defendant prior to the time he made the statements in question. In response to the statements by the prosecutor, Judge LANDRY granted the defendant's motion and stated that "those statements made by the defendant during the period of interrogation in the police administration building, the subject of this motion, are suppressed."

On April 10, 1978, an order was entered suppressing "at trial" the "statements made by defendant James Ray Mendoza shortly after his arrest at the Milwaukee Police Department Administration Building, on July 10, 1974, in the presence of Milwaukee Police Officers Jacquelen [sic] and Adamczewski."

On April 10, 1978, the state filed a notice of appeal from the above order. The defendant filed a notice of cross appeal on May 16, 1978.

In our opinion the issues which require consideration on this appeal are:

1. Does the state have the right to bring this appeal under sec. 974.05 (1) (d) 2 or 3, Stats. ?

2. May the statements made by the defendant shortly after his arrest be used by the state for purposes of impeachment?

## STATE'S RIGHT TO APPEAL UNDER SEC. 974.05 (1) (d), STATS.

A threshold question is whether the state has a right to appeal from the order suppressing the statements of the defendant. The statute relied upon by the state in bringing this appeal is sec. 974.05 (1) (d) 2 and 3, Stats.

---

[1] Actually, Officer Monreal testified at the 1978 hearings that he had advised the defendant ". . . that if he decided to say anything, he could stop at whatever time he so desired."

1975 (amended by ch. 187, sec. 129, Laws of 1977), which provides:

"974.05   **State's appeal.**   (1) A writ of error or appeal may be taken by the state from any:

". . . .

"(d) Order or judgment the substantive effect of which results in:

". . . .

"2. Suppressing evidence; or

"3. Suppressing a confession or admission."

The defendant argues that the circumstances of this case do not fit into the provisions of sec. 974.05(1)(d) 2 or 3, Stats. 1975, because the statements of the defendant which were suppressed are not evidence, confessions or admissions. Specifically, the defendant contends that the word "evidence" in paragraph 2 of sec. 974.05(1)(d) must be limited to physical evidence since paragraph 3 refers to oral statements of the defendant— "confession or admission," and therefore the statements which were suppressed are not "evidence."

The defendant's argument is without merit. When statutory language is clear and unambiguous, this court is to arrive at the intention of the legislature by giving the language its plain, ordinary and accepted meaning. *State v. Engler,* 80 Wis.2d 402, 406, 259 N.W.2d 97 (1977); *Vigil v. State,* 76 Wis.2d 133, 142, 250 N.W.2d 378 (1977); *State ex rel. Milwaukee County v. WCCJ,* 73 Wis.2d 237, 241, 243 N.W.2d 485 (1976). The word "evidence" is unambiguous and is generally understood to mean something that furnishes or tends to furnish proof. In a legal sense, it means something which is legally submitted to a competent tribunal as a means of ascertaining the truth of any relevant fact. This would include physical evidence as well as oral statements or testimony. Thus, the statements of the defendant which were suppressed in this case must be categorized as "evidence."

Furthermore, a statute should be construed to avoid an unreasonable or absurd result. *Wis. Environmental Decade v. Public Service Comm.*, 84 Wis.2d 504, 528, 267 N.W.2d 609 (1978) ; *Schwartz v. ILHR Dept.*, 72 Wis.2d 217, 222, 240 N.W.2d 173 (1976) ; *State ex rel. Wis. Elec. Power Co. v. Bardwell*, 71 Wis.2d 718, 729, 239 N.W.2d 78 (1976). If this court were to construe the word "evidence" in sec. 974.05(1)(d)2, Stats., as meaning only physical evidence, the state would be permitted to appeal under sec. 974.05(1)(d)2 and 3 only from orders or judgments which result in suppressing physical evidence, confessions or admissions, but would be prevented from appealing from the suppression of such evidence as oral statements of the defendant which are not confessions or admissions, an identification, or any oral statements or testimony of witnesses other than the defendant. The legislature did not intend such an unreasonable result.

This court, without specifically deciding the issue, has permitted the state to appeal pursuant to sec. 974.05 (1)(d)2, Stats., from an order suppressing a lineup, *State v. Beals*, 52 Wis.2d 599, 191 N.W.2d 221 (1971), and from an order suppressing the testimony of a police officer, *State v. Smith*, 72 Wis.2d 711, 242 N.W.2d 184 (1976). Accordingly, sec. 974.05(1)(d) 2 gives the state the right to appeal in the instant case from the order suppressing the oral statements of the defendant. Because we reach this conclusion, we will not determine whether the statements of the defendant constitute "admissions" so as to allow the state to appeal pursuant to sec. 974.05(1)(d)3.

## USE OF STATEMENTS FOR IMPEACHMENT PURPOSES.

The state appeals from the suppression order on the ground that the retrial court erred in prohibiting the

state from using the defendant's statements as impeachment evidence. The state's arguments are premised on its conclusion that the order suppressing the use of the two statements "at trial" precludes the state from using the statements not only in its case-in-chief but also for impeachment purposes. The record does not support such a construction of the order.

At the first trial, Judge O'CONNELL issued twenty-one findings of fact on the issue of the admissibility of the statements of the defendant, and made the following conclusions:

"Upon the foregoing findings of fact and considering the totality of the circumstances, the Court concludes, based upon the law applicable to the admissibility of statements, that:

"1. With regard to the Miranda requirements, the defendant having been appropriately advised of his rights not once but twice, and having on each occasion indicated understanding of them and having thereafter made responses to questions put to him, the State has met its burden of proof on the admissibility of such responses.

"2. With regard to voluntariness, the Court concludes from the totality of the circumstances, including the age of the defendant, evidence of prior contact with law enforcement, absence of duress or coercion, physical or psychological, threats or promises, physical surroundings, brevity of time of interrogation, the statements made by the defendant as a result of such interrogation were voluntarily made by him and admissible in evidence."

On retrial, Judge LANDRY first adopted the findings of Judge O'CONNELL and denied the defendant's motion to suppress the statements. The prosecutor then informed the court that he was concerned about the fact that the defendant had not been advised of his right to have an attorney present during interrogation or his right to stop questioning at any time. A discussion followed during which the retrial court stated:

"It is my view that the Miranda case speaks fluently and well to the subject. The Miranda warning is conceded by the State to be inadequate and insufficient and on the basis of that changed factual basis at least as I construe it to be inadequate and insufficient, the proposition simply being that this particular case raises that very fundamental question as to whether or not the defendant then and there fully appreciated that he had a right to an attorney present at the interrogation. The State has pointed out in the record where that aspect of the warning was omitted not on one occasion but on two occasions."

The prosecutor then informed the court that the state was not conceding anything. The retrial court then spoke further about the *Miranda* decision and granted the motion of the defendant:

*"The Court:* It is precisely that question that the Supreme Court expressed itself to on Miranda citing example after example after example where the attorney was ready, willing and able to participate, but the defendant was unable to use the services of an attorney, and it is obvious that the intention, when the Court used the words, understandingly gives up his rights that he understands that he has an opportunity to have an attorney present with him at the time of interrogation and not merely at the time of questioning. The Supreme Court specifically pointed out in that concurring opinion that the most important aspects of representation frequently occurs prior to the trial itself; and to give an individual the right to an attorney in court merely for the purposes of the appearance of protecting his constitutional rights, reduces the proposition to a mere sham.

"On the basis of what has been agreed to as the record in this case, the Court will indicate that those statements made by the defendant during the period of interrogation in the police administration building, the subject of this motion, are suppressed. Motion by the defendant is granted."

The written order of the court states that the statements would "be suppressed at trial."

From this sequence of events, the state apparently concludes that the retrial court suppressed all use of the statements at trial, including use for impeachment purposes. We conclude and here determine that the retrial court suppressed the statements because they were not obtained in compliance with *Miranda v. Arizona,* 384 U.S. 436 (1966). A finding that statements were obtained in violation of *Miranda* does not inexorably lead to a finding of involuntariness with the attendant prohibition against impeachment use of the statements. *State v. Hernandez,* 61 Wis.2d 253, 258, 259, 212 N.W.2d 118 (1973). The retrial court initially refused to suppress the statements on the grounds of involuntariness and non-compliance with *Miranda.* The court later ordered the statements suppressed after the prosecutor informed the court that the defendant had not been advised of his right to have an attorney present during interrogation or his right to stop the questioning at any time. It is our opinion that an examination of the record leads to only one conclusion. The statements were suppressed because of non-compliance with the *Miranda* requirements. At no time did the retrial court find the defendant's statements to be involuntary, nor did the court prohibit the state from using the statements for impeachment purposes.

A statement of the defendant made without the appropriate *Miranda* warnings, although inadmissible in the prosecution's case-in-chief, may be used to impeach the defendant's credibility if the defendant testifies to matters contrary to what is in the excluded statement. *Harris v. New York,* 401 U.S. 222 (1971); *State v. Oliver,* 84 Wis.2d 316, 320, 321, 267 N.W.2d 333 (1978); *Upchurch v. State,* 64 Wis.2d 553, 562, 563, 219 N.W.2d 363 (1974); *Wold v. State,* 57 Wis.2d 344, 353–356, 204 N.W.2d 482 (1973). It is only if the statements are

also found to be involuntary that their use for impeachment purposes is precluded. *Upchurch v. State, supra,* at 562, 563; *Wold v. State, supra,* at 353–356. Because the statements of the defendant in the instant case were held to be in violation of the *Miranda* requirements but were not found to be involuntary, the state may use the statements to impeach the defendant's credibility if they contradict the defendant's testimony at trial.

Since the state expressly asserts that it intends to use the statements only for impeachment purposes and does not challenge the ruling of the retrial court regarding non-compliance with *Miranda,* it is unnecessary to now review that ruling of the retrial court.

## CROSS APPEAL.

The defendant raises several questions on his cross appeal. However, the preliminary issue to be considered is whether the cross appeal is properly before this court. This issue was not raised by the parties, but this court, sua sponte, has the power to raise and determine the issue of whether it has subject-matter jurisdiction. *Taylor v. State,* 59 Wis.2d 134, 137, 207 N.W.2d 651 (1973); *State v. Omernik,* 54 Wis.2d 220, 222, 194 N.W.2d 617 (1972).

The state has appealed from an order of the circuit court, dated April 10, 1978, suppressing statements made by the defendant following his arrest. The defendant has cross appealed from five orders of the circuit court: (1) an order dated March 24, 1978, denying a motion to prohibit the use of audio-visual equipment in the courtroom during the course of trial; (2) an order dated April 4, 1978, denying a motion to suppress statements made by the defendant to a polygraph examiner and testimony given at trial by the defendant reiterating those statements, upon the ground that such statements did

not follow a voluntary waiver of the defendant's privilege against self-incrimination because the waiver followed an unlawful change of venue; (3) an order dated April 6, 1978, denying a motion to suppress statements, finger prints, hair samples, tangible objects, and eyewitness identifications on the ground that such evidence was obtained as fruits of an arrest which was unlawful because it was not based upon probable cause; (4) an order dated April 10, 1978, denying the motion to suppress the two statements made by the defendant at the Police Administration Building on July 10, 1974, on the grounds of denial of the right to counsel; and (5) an order dated April 11, 1978, denying a motion for an evidentiary hearing into alleged prosecutorial misconduct consisting of failure to produce exculpatory evidence.

The right to appeal is a statutory right and, absent a statutory provision to that effect, no appeal may be had. *State v. Jakubowski,* 61 Wis.2d 220, 223, 212 N.W. 2d 155 (1973); *State v. Beals, supra,* at 605. There is no statutory provision for a criminal defendant to appeal prior to trial from an order denying suppression of evidence. *State v. Withers,* 61 Wis.2d 37, 38, 211 N.W.2d 456 (1973); *Jones v. State,* 59 Wis.2d 184, 188, 207 N.W.2d 890 (1973); *State v. Beals, supra,* at 605. Neither is there any statutory provision giving a defendant the right to appeal prior to trial from an order refusing to exclude television cameras during trial or from an order denying a motion for an evidentiary hearing.

Sec. 817.12(4), Stats. 1975,[2] provides for a cross appeal by a respondent who wishes to review an order not

[2] Sec. 817.12(4), Stats. 1975, provides:

"(4) When any respondent desires to review an order, judgment or portion thereof not appealed from, he shall within 30 days after service on him of notice of appeal take and perfect his appeal or be deemed to have waived his right so to appeal."

Chapter 817, Stats., was repealed by ch. 187, sec. 118, Laws of 1977. For the present counterpart to sec. 817.12, Stats. 1975, see secs. 809.10 and 809.13, Stats. 1977.

appealed from. Such an order must be an appealable order as provided in sec. 817.33, Stats. 1975:[3]

"817.33 **Appealable orders.** The following orders when made by the court may be appealed to the supreme court:

"(1) An order affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken.

"(2) A final order affecting a substantial right:

"(a) Made in special proceedings, without regard to whether the proceedings involve new or old rights, remedies or proceedings and whether or not the right to appeal is given by the statutes which created the right, remedy or proceedings, or

"(b) Made upon a summary application in an action after judgment.

"(3) When an order:

"(a) Grants, refuses, continues or modifies a provisional remedy;

"(b) Grants, refuses, modifies or dissolves an injunction;

"(c) Sets aside or dismisses a writ of attachment;

"(d) Grants a new trial;

"(e) Grants or overrules a motion to dismiss under s. 802.06(2) or a motion for judgment on the pleadings based on total insufficiency of pleaded defenses under s. 802.06(3) or a motion to strike based on the insufficiency of one or more pleaded defenses under s. 802.06 (6);

"(f) Decides a question of jurisdiction;

"(g) Grants or denies a motion for stay of proceedings under s. 801.63; or

"(h) Denies a motion for summary judgment.

"(3m) A party on whose motion a new trial has been ordered may nevertheless appeal from such order for the purpose of reviewing a denial of his motion after verdict for judgment notwithstanding the verdict or to change answers in the verdict.

---

[3] *See* sec. 817.10, Stats. 1975. For the present counterpart to sec. 817.33, Stats. 1975, *see* secs. 808.03 and 809.10, Stats. 1977.

"(4) Orders made by the court vacating or refusing to set aside orders made at chambers, where an appeal might have been taken in case the order so made at chambers had been made by the court in the first instance. For the purpose of appealing from an order either party may require the order to be entered by the clerk of record."

Subsections (2), (3) and (4) are inapplicable here, and none of the orders from which the defendant has attempted to cross appeal determines the action and prevents a judgment from which an appeal may be taken. Therefore, they are not appealable orders and the cross appeal must be dismissed.

*By the Court.*—Order affirmed; cross appeal dismissed.