STATE of Wisconsin, Plaintiff-Respondent,

v.

Jonathan L. FRANKLIN, Defendant-Appellant.†

Court of Appeals

*Nos. 98–2420–CR, 98–2421–CR. Submitted on briefs February 26, 1999.—Decided May 20, 1999.*

(Also reported in 596 N.W.2d 855.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Archie E. Simonson* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, with *Marguerite M. Moeller*, assistant attorney general.

Before Dykman, P.J., Eich and Deininger, JJ.

EICH, J.    Jonathan L. Franklin was convicted, on his guilty plea, of felony murder and aggravated battery, as a party to the crimes. He was sentenced to sixty years in prison. He appeals from the judgments of conviction, and from the circuit court's orders denying his motions to suppress evidence and withdraw his pleas.[1] He argues that the court erred in ruling that: (1) state-

---

[1] While the charges are based on unrelated events and the appeal is from both convictions, the arguments Franklin advances relate only to the murder conviction.

ments he made to police after invoking his right to counsel were voluntary, and therefore admissible—for impeachment purposes only[2]—even though they were obtained by the officers through further questioning after Franklin had invoked his right to counsel, and thus in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981); and (2) he did not establish a "fair and just reason" to withdraw his pleas. We reject the arguments and affirm the judgments and orders.

Jonathan Daniel was killed in September 1996, during a drug transaction in Madison. Franklin was identified as being the driver of the getaway car and another man, whose identity was unknown at the time, was said to have been the "shooter." Franklin was arrested and brought to the police station for questioning. It is undisputed that police detectives, hoping to learn the shooter's identity from Franklin, intentionally elected to continue questioning him after he had invoked his right to counsel—knowing that, because they were violating his rights under *Edwards*, they would lose the opportunity to use any self-incriminatory statements as substantive evidence. During the interrogation, Franklin identified the person who had done the shooting and accompanied the detectives to a house in Madison, which he pointed out to them as the shooter's residence.

After he was charged as a party to the crimes of murder and robbery with a dangerous weapon, Franklin moved to suppress the statements he made to police. After a hearing, the trial court ruled that, while the *Edwards* violation required suppression of any evidence of Franklin's statements in the State's case-in-chief, because the statements were voluntarily made,

---

[2] The circuit court granted Franklin's motion to suppress the evidence in the State's case-in-chief.

411

they could be used by the State for impeachment or rebuttal purposes should Franklin elect to testify at his trial. As indicated, Franklin eventually pled guilty to the murder charge, and to an unrelated charge of aggravated battery. Prior to sentencing, Franklin moved to withdraw his pleas, and the circuit court denied the motion, concluding that he had not put forth a fair or just reason for withdrawal.

Franklin argues first that the circuit court erred in determining that the statements he made to police while in custody were admissible for impeachment purposes. It is a two-part argument: He says first that the court erroneously failed to consider the "presumption of involuntariness"—which he says applies to all statements obtained by police after the suspect's invocation of his or her right to counsel; and, second, that the court erred in ruling that his statements were voluntary.

An accused person has an absolute right to have counsel present during custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). Once the Fifth Amendment right to counsel is invoked, all police-initiated questioning must stop until counsel is present—unless the accused initiates further communication with the police. *Edwards*, 451 U.S. at 484–85. An involuntary statement obtained in violation of these principles is inadmissible at trial for any purpose. *State v. Moats*, 156 Wis. 2d 74, 93, 457 N.W.2d 299, 308 (1990). If, however, the statement is voluntary, even if it was secured by the police in violation of *Miranda* and/or *Edwards*, we are satisfied, as we explain below, that it may be used to impeach the defendant's conflicting testimony—although it is inadmissible in the prosecution's case-in-chief.

Whether a statement is voluntary or involuntary depends on whether it was compelled by coercive means or improper police practices. *State v. Clappes*, 136 Wis. 2d 222, 235–36, 401 N.W.2d 759, 765 (1987). We look to the "totality of the circumstances" to resolve the question, weighing the defendant's personal characteristics—such as his or her age, education, intelligence, physical and emotional condition, and prior experience with the police—against the coercive police conduct. *Id.* at 236, 401 N.W.2d at 766. Matters relevant to the coercive nature of the police conduct include the length of the interrogation, delay in arraignment, the general conditions under which the questioning took place, whether excessive physical or psychological pressure was brought to bear on the accused, whether the police used inducements, threats, or "strategies" to compel a response, and whether the accused was informed of his or her constitutional rights to counsel and against self-incrimination. *Id.* at 237, 401 N.W.2d at 766. In this context, "voluntariness" is a question of constitutional fact, which we review *de novo. State v. Owen*, 202 Wis. 2d 620, 640, 551 N.W.2d 50, 59 (Ct. App. 1996). The circuit court's findings of historical fact, however, will not be set aside unless they are clearly erroneous. *Id.*

Franklin cites *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991), for the proposition that statements taken in violation of *Miranda* and/or *Edwards* are presumed to be the involuntary product of police coercion and are therefore inadmissible at trial for all purposes. He does not elaborate, nor does he discuss the case further. While it is true that the Supreme Court stated at one point in *McNeil* that statements taken in violation of *Edwards* are "presumed involuntary," *id.* at 177, the

sentence in which that phrase appears concludes by stating that such statements are "therefore inadmissible *as substantive evidence* at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." *Id.* (emphasis added). We do not see the Court's remark as a holding that all statements taken in violation of *Edwards* are presumed to be coerced—and thus inadmissible for any and all purposes—including impeachment. Rather, as the Court plainly stated, they are inadmissible only as "substantive" or affirmative evidence. Indeed, the case cited by the Court for its statement, *Michigan v. Harvey*, 494 U.S. 344 (1990), held that, while a post-invocation waiver of counsel obtained by police "in violation of the [Miranda rules]"[3] is presumed to be invalid, and that evidence obtained pursuant to such a waiver "is inadmissible in the prosecution's case in chief," the evidence would nonetheless be "admissible to impeach conflicting testimony by the defendant." *Id.* at 345, 349, 350.

[3] We see no difference in this respect between so-called *Miranda* violations and *Edwards* violations. In *McNeil v. Wisconsin*, 501 U.S. 171 (1991), the Supreme Court described *Edwards* as establishing "a second layer of prophylactics for the Miranda right to counsel." *Id.* at 176. And in *Michigan v. Harvey*, 494 U.S. 344 (1990), the Court, citing *Harris v. New York*, 401 U.S. 222 (1971), stated: "We have already decided that although statements taken in violation of . . . the prophylactic Miranda rules may not be used in the prosecution's case in chief, they are admissible to impeach conflicting testimony by the defendant." *Id.* at 350. And in *State v. Camacho*, 170 Wis. 2d 53, 75, 487 N.W.2d 67, 76 (Ct. App. 1992), *rev'd on other grounds*, 176 Wis. 2d 860, 501 N.W.2d 380 (1993), we appear to have viewed the two interchangeably, speaking in terms of *Miranda* in a context indicating that we were, in fact, considering an *Edwards* violation.

414

We are satisfied that *McNeil* does not stand for the proposition advanced by Franklin. We are equally satisfied that, under *McNeil* and related Wisconsin cases, a statement, even if obtained in violation of *Miranda* and/or *Edwards* (and thus inadmissible in the prosecution's case-in-chief), may, if shown to have been voluntarily made, be used to impeach the defendant's conflicting testimony. And we believe our holding in this regard—and our reading of the Supreme Court cases—is supported by the Wisconsin Supreme Court's decisions in *State v. Harris*, 199 Wis. 2d 227, 544 N.W.2d 545 (1996), and *State v. Moats*, 156 Wis. 2d 74, 457 N.W.2d 299 (1990). In *Harris*, the court cited *McNeil* for the proposition that "following an assertion of the [Fifth Amendment] right to counsel, police-initiated interrogation renders purported waivers ineffective and thus statements so obtained are inadmissible as substantial evidence *in the prosecution's case-in-chief* even if preceded by a purported waiver." *Harris*, 199 Wis. 2d at 251, 544 N.W.2d at 554–55 (emphasis added). In *Moats*, the court, faced with the State's concession that the defendant's statements were taken "in . . . violation of the defendant's rights under *Miranda* and *Edwards*," stated that both it and the United States Supreme Court had held that, while compelled involuntary testimony is inadmissible at trial for any purpose, a "constitutionally tainted confession" that is not compelled or involuntary "may be used to impeach a defendant who chooses to testify in his own behalf at trial,"[4] and went on to consider the voluntariness of the defendant's statements. *Moats* at

___

[4] The cases cited by the court include: *Michigan v. Harvey, supra, Oregon v. Hass*, 420 U.S. 714 (1975); *Harris v. New York, supra*; and *State v. Mendoza,* 96 Wis. 2d 106, 291 N.W.2d 478 (1980).

93–94, 457 N.W.2d at 308. Finally, in *State v. Camacho*, 170 Wis. 2d 53, 487 N.W.2d 67 (Ct. App. 1992), *rev'd on other grounds*, 176 Wis. 2d 860, 501 N.W.2d 380 (1993), we rejected the defendant's argument that the trial court improperly allowed the prosecution to use post-invocation-of-counsel statements he made to police to impeach his trial testimony. Upholding the trial court's determination that the statements, even though obtained in violation of *Edwards* and *Miranda*, were voluntary, we stated that "a statement is not presumed compelled simply because interrogators may have taken it in violation of *Miranda*," and, further, that "[s]uch statements are barred from use only during direct examination." *Id.* at 75, 487 N.W.2d at 76.

We next consider whether the trial court erred when it ruled that the challenged statements were voluntary; and we conclude that it did not. The court proceeded properly by balancing Franklin's personal characteristics against any coercive police practices and, doing so, determined that his statements were voluntary, and that, while the officers concededly questioned him in violation of *Edwards*, no unjust police coercion bearing on the voluntariness of the statements was present. Specifically, the court found no indication that the officers made any promises of leniency to Franklin, or threatened him in any way, or that they questioned him beyond their intended narrow purpose of attempting to establish the identity of the shooter. The court also considered that the interrogation lasted for only an hour and a half, during which time Franklin was allowed to make phone calls (and in fact made three), smoke cigarettes, go to the restroom if he desired, and was offered refreshments. With respect to Franklin's personal characteristics, the court noted that he was coherent and aware of his surroundings

and what was taking place, was not under the influence of alcohol or drugs, never indicated that he was hungry, tired,[5] or suffering from physical pain or discomfort. The record also indicates that Franklin has had prior police experience, having been charged with three unrelated felonies in the recent past.

Our independent consideration of the totality of the circumstances surrounding the giving of the challenged statements satisfies us that they were not coerced, but were voluntarily given by Franklin, and that the circuit court did not err in ruling that they could be used at trial for impeachment purposes, under the rules discussed earlier in this opinion.

Finally, Franklin argues that the circuit court erred when it denied his motion to withdraw his pleas. Whether to allow a defendant to withdraw a guilty plea before sentencing is a discretionary determination by the trial court, which we will sustain if it is "demonstrably . . . made and based upon facts appearing in the record and in reliance on the appropriate and applicable law." *State v. Garcia*, 192 Wis. 2d 845, 861, 532 N.W.2d 111, 117 (1995). To prevail on such a request, the defendant must show, by a preponderance of the evidence, the existence of a "fair and just reason" for withdrawal—"some adequate reason for [his or her] change of heart," but something more than a mere desire for a trial. *State v. Shanks*, 152 Wis. 2d 284, 288,

---

[5] Franklin did indicate at one point that he was tired—but this was at the very end of the process, after he had been questioned by the officers and had gone with them to point out the "shooter's" house and was returning with them to the police station.

448 N.W.2d 264, 266 (Ct. App. 1989); *State v. Canedy,* 161 Wis. 2d 565, 583, 469 N.W.2d 163, 170–71 (1991).[6]

Franklin maintains that the court erroneously exercised its discretion in this case by failing to address three issues in its decision denying his plea-with-drawal motion: (1) his trial counsel's failure to "investigate" certain alibi witnesses; (2) his desire to discharge his attorney before entering his pleas; and (3) the assistant district attorney's involvement in the investigatory phase of the case. Had the court considered these factors, Franklin says, they would have established fair and just reasons for withdrawing his pleas. Franklin never raised or argued the second and third points in the circuit court, however; and he has thus waived any right to pursue them on appeal. *See Zeller v. Northrup King Co.,* 125 Wis. 2d 31, 35, 370 N.W.2d 809, 812 (Ct. App. 1985) (we do not consider arguments raised for the first time before this court). Beyond that, it is elementary that a trial court cannot be said to have erroneously exercised its discretion in making a ruling when it was never asked to exercise

---

[6] Franklin, pointing to language in *State v. Canedy,* 161 Wis. 2d 565, 582–83, 469 N.W.2d 163, 170 (1991), that "a 'fair and just reason' contemplates 'the mere showing of some adequate reason for defendant's change of heart,' " argues that the circuit court "misstate[d] . . . the law!" when it said at one point in its decision from the bench that a "fair and just reason" to withdraw a plea is "*more* than a mere showing of some adequate reason for change of heart." Our review of the hearing transcript satisfies us that the court properly set forth the law and the standards for review at the beginning of the hearing, and that the misstatement to which Franklin refers was either an error in the transcription or, at best, a mistake in exposition by the court. Everything else in the court's analysis indicates that the court did in fact use and apply the proper legal standard.

that discretion in the first place. *State v. Gollon*, 115 Wis. 2d 592, 604, 340 N.W.2d 912, 918 (Ct. App. 1983).

Franklin's claim that his trial attorney failed to properly investigate his case is based on his assertion that counsel failed to interview various people who, he says, would have provided him with an alibi; and he testified at the motion hearing that counsel's failure to pursue the matter contributed to his (Franklin's) decision to plead to the charges. Franklin's attorney also testified at the hearing. He stated that Franklin wanted him to present a defense that Franklin himself admitted was not true—that he had some people who would say he was somewhere else at the time of the shooting, even though he had already admitted to driving the shooter to and from the scene of the murder. According to counsel, he informed Franklin that, ethically, he couldn't call witnesses who he knew were lying.

The trial court considered Franklin's and his attorney's testimony and found the attorney's to be more credible, stating that "much of it [wa]s corroborated" and that Franklin's testimony to the contrary was "not . . . credible." The court went on to conclude that counsel's performance was not deficient in any way, noting that he had spent numerous hours with Franklin, had reviewed all the evidence, and had counseled Franklin that the decision whether to plead guilty must be his own. We are satisfied that the court did not erroneously exercise its discretion in failing to give more consideration to Franklin's claim that his attorney's failure to interview these witnesses constituted a "fair and just reason" for withdrawing his guilty pleas.

*By the Court.*—Judgments and orders affirmed.