State of Wisconsin, Plaintiff-Respondent,
v.
Carter T. Hopson, Defendant-Appellant.
No. 03-2696-CR.
Court of Appeals of Wisconsin.
Opinion Filed: July 7, 2004.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶1. PER CURIAM.
Carter T. Hopson appeals from a judgment entered after he pled guilty to one count of armed robbery with threat of force, contrary to Wis. Stat. § 943.32(1)(b) and (2) (2001-02),[1] and one count of possession of firearm by a felon, contrary to Wis. Stat. § 941.29(2). He also appeals from an order denying his postconviction motion. Hopson claims: (1) the trial court should have granted his motion seeking to suppress audio tapes that recorded his and another inmate's telephone conversations while in custody; (2) admission of his statements from custodial interviews with police violated his privilege against self-incrimination and right to counsel; (3) the trial court erroneously exercised its discretion in imposing his sentence; and (4) the trial court erred when it provided a cursory explanation in the order denying his postconviction motion. Because we resolve each issue in favor of upholding the judgment and order, we affirm.

BACKGROUND
¶2. On July 10, 2001, in downtown Milwaukee, Arthur Mahan and Kenny Crump were robbed at gunpoint by an individual later identified as Carter T. Hopson. Both victims identified Hopson as the perpetrator. In addition, the police discovered tapes of phone conversations that an inmate, Jerry Versey, placed on July 11 and September 27, 2001. In the first call, a person who identified himself as "Carter" (Hopson's first name) discussed his involvement in a robbery, which occurred on the same date and at the same location as the one that police suspected Hopson had committed.
¶3. On July 30, 2001, Hopson was taken into custody on a probation revocation unrelated to this matter. While in custody, he was interviewed by police on August 6, 2001, regarding the armed robbery and on January 3, 2002, regarding Hopson's attempt to intimidate Mahan by offering him money, an act alleged to have occurred after Hopson's arrest. These interviews were recorded.
¶4. In September 2001, Hopson was charged with armed robbery and felon in possession of a firearm. On January 3, 2002, the State added one count of intimidation of a witness, which stemmed from Hopson offering one of the victims money in exchange for the victim's refusal to prosecute. This additional charge was later dismissed, but read-in for purposes of sentencing.
¶5. While Hopson was in custody at the House of Correction on this matter, he made collect calls on August 29, September 2, October 26 and November 9, 2001, discussing this case.
¶6. Hopson pled not guilty and filed motions seeking to suppress the statements he made during the in-custody interviews, the statements Versey made during the recorded phone conversations, and the statements Hopson made during the recorded phone conversations. The trial court denied all the motions to suppress. Hopson then changed his plea to guilty.
¶7. At the sentencing hearing, on the armed robbery charge, the State recommended a sentence of twelve years' imprisonment, consisting of eight years' confinement and four years' extended supervision, consecutive to any other sentence. On the felon in possession charge, the State recommended a concurrent sentence of four years' imprisonment, consisting of two years' confinement and two years' extended supervision. The defense asked the court to follow the State's recommendation and "in fact jointly enter[ed] into it." The trial court sentenced Hopson to the exact term that was jointly recommended. Judgment was entered.
¶8. Hopson filed a motion seeking postconviction relief, arguing that the sentence was excessive and should be reduced; this motion was denied. Hopson now appeals.

DISCUSSION

A. Motion to Suppress Recorded Phone Calls.
¶9. Hopson claims that his motion to suppress audio tapes containing his and Versey's telephone conversations should have been granted because neither he nor Versey consented to allowing the recording. Review of an order denying a suppression motion presents a question of constitutional fact. State v. Hughes, 2000 WI 24, ¶15, 233 Wis. 2d 280, 607 N.W.2d 621. We will not disturb the trial court's findings of fact unless they are clearly erroneous, but apply the law to the facts independently. Id. Our review demonstrates that the trial court's findings of fact are not clearly erroneous; likewise, our independent review of the law supports the trial court's decision to admit the audio tapes.
¶10. Hopson wanted to suppress the use of Versey's recorded phone conversation from July 11 because the person Versey spoke to identified himself as "Carter" and discussed his involvement in the armed robbery occurring at the same time and date as the one with which Hopson was charged. Hopson's basis for seeking suppression was that neither Versey nor Hopson were advised that this telephone conversation would be recorded. We reject Hopson's argument.
¶11. The trial court found that both Versey and Hopson were informed that their telephone conversations made during custody would be recorded. First, upon entering custody, Versey signed an acknowledgement of the Wisconsin Administrative Code rules regarding phone calls. The trial court referred to the Wisconsin Administrative Code, which gives specific notice to inmates that their phone calls can be used for any purpose listed in Wis. Admin. Code § DOC 309.39 (2001). Clearly, Versey was provided with sufficient notice that any telephone conversation he made during custody would be recorded.
¶12. Second, Hopson claims there was no proof that he consented to the recording and monitoring of the phone calls he made from the House of Correction on August 29, September 2, October 26, and November 9, 2001. Hopson specifically argues that Wis. Stat. § 968.30(3)(b) states that contents of a recorded phone conversation, along with evidence derived from this communication, may be disclosed only if the person who consented is available to testify or if a witness is available to authenticate the recording. Again, Hopson's claim is meritless.
¶13. The record reflects that Deputy Deborah Burmeister of the Milwaukee County Sheriff's Department authenticated this recording. She testified that an inmate cannot place a phone call at the House of Correction without first listening to verbal statements notifying the inmate that the call is being recorded. Then, a verbal prompt states that by pressing "one" to complete the call, consent is given to record it. If the inmate does not press "one" to consent, the call cannot be placed. Burmeister also testified that she was not aware of any circumstances where a prompt was not heard. Therefore, in order to complete a call, Hopson must have consented.
¶14. Hopson also claims that even if consent to record his phone calls was given, he still had no notice that these conversations would be used against him in a trial. Hopson states that using the calls would unduly prejudice the jury against him because the contents contained a lot of miscellaneous material not related to the case, but which a jury might find distasteful. Hopson cites no authority for the proposition that he had to be notified about the possibility of the recordings being used in a trial. Therefore, we reject this argument. See State v. Pettit, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).
¶15. Nevertheless, existing case law refutes Hopson's argument on the merits. In State v. Smith, 149 Wis. 2d 89, 438 N.W.2d 571 (1989), the court held that although Smith expected privacy on a cordless phone, he "had not read the manual" and "a reading of the manual would have led a reasonable person to conclude there was no assurance of privacy." Id. at 92. Similarly, a reasonable person who hears phone prompts telling him or her that the call is being recorded would realize that his or her conversation was not private.
¶16. Based on the foregoing, we conclude that the trial court did not err when it denied Hopson's motion to suppress on this ground.

B. Suppression of Custodial Statements.
¶17. Hopson next contends that the statements he made during the custodial interviews should have been suppressed under Miranda v. Arizona, 384 U.S. 436 (1966), and State v. Dagnall, 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680, because detectives violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. Whether an incarcerated, interrogated person is entitled to have counsel present at questioning and whether these statements are excludable in criminal proceedings following the interrogation are questions of constitutional fact, which this court decides without deference to the trial court. State v. Hartwig, 123 Wis. 2d 278, 283, 366 N.W.2d 866 (1985). He further claims that the statements were involuntary because he waived his rights before he was advised of the purpose of the interview. We are not persuaded. This court reviews the voluntariness of statements using a "totality of the circumstances" analysis, which "weigh[s] the [suspect's] personal characteristics ... against the [alleged] coercive police conduct." State v. Franklin, 228 Wis. 2d 408, 413, 596 N.W.2d 855 (Ct. App. 1999). The accused's statement to law enforcement is involuntary only if it "was compelled by coercive means or improper police practices." Id. The court's decision in a factual dispute regarding a defendant's statements will not be disturbed unless the court's findings of evidentiary or historical fact are contrary to the great weight and clear preponderance of the evidence. State v. Clappes, 136 Wis. 2d 222, 235, 401 N.W.2d 759 (1987). Factual issues that require the application of constitutional principles are reviewed de novo. Id.
¶18. Hopson was interviewed twice. The first interview occurred on August 6, 2001. He contends that the police violated his Fifth Amendment right against self-incrimination by failing to inform him of the reason for the interview before securing a waiver of his rights. In other words, he is arguing that he should not have been asked to waive his right against self-incrimination until after he was informed about the substance of the interview. He claims that because it did not happen in this order, his waiver cannot be considered a knowing and voluntary waiver. The trial court disagreed with this argument, and found that the police obtained a valid waiver before proceeding with the interview and therefore there was no basis to suppress Hopson's custodial statements. We conclude that the trial court did not err.
¶19. The record reflects that Hopson signed the form waiving his rights relative to the August interview. He claims, however, that he did not read the form. Hopson also claims that the manner in which the rights were read to him and the waiver obtained was hurried. The trial court, after hearing testimony from John Adamson, a special agent for the Bureau of Alcohol, Tobacco, and Firearms (ATF), found that Hopson voluntarily and understandingly waived his rights under Miranda and agreed to make statements. Adamson testified that he read the Miranda warnings to Hopson and saw Hopson reading the waiver form. The trial court found the testimony of Adamson more credible than Hopson's self-serving denial. The record supports the trial court's credibility call.
¶20. Hopson states that he was never offered food or drink, but he never asked for anything. There is no evidence in the record of police coercion or that Hopson was denied basic comforts. Agent Adamson testified that after being read his rights, Hopson said he understood his rights and never requested that the interview be stopped. Based on the totality of the circumstances, we agree with the trial court that Hopson's waiver of his Fifth Amendment right was made knowingly, intelligently and voluntarily. The trial court did not err in denying the motion to suppress on this ground.
¶21. The second interview occurred on January 3, 2002. The basis for seeking suppression of the statements made at this interview is Hopson's Sixth Amendment right to counsel. Hopson argues that this interview focused on the intimidation of witness charge, which related to the armed robbery charge; because Hopson had been charged with the armed robbery and was represented by counsel on the armed robbery charge, he had the right to have counsel present for this interview. The trial court, however, found that Hopson was properly given his Miranda rights, was advised of his rights under the constitution, waived these rights, and agreed to be interviewed without an attorney present. The trial court ruled that because the intimidation charge was a new investigation on a crime that Hopson had not yet been charged with, he could be interviewed without his attorney present because he properly waived his Miranda rights. We agree with the trial court.
¶22. The Sixth Amendment right to counsel is offense-specific. State v. Dagnall, 2000 WI 82, ¶32, 236 Wis. 2d 339, 612 N.W.2d 680. The right is tied to the crime with which the accused is charged. Clearly then, because Hopson had counsel on the armed robbery charge, police could not question him regarding that charge without counsel being present. Id., ¶53. However, as a suspect in the investigation of a separate, uncharged crime, Hopson could be questioned regarding the uncharged crime as long as the interview was not a pretext to solicit information about the armed robbery. Id., ¶55. It is not disputed that the January interview did not serve as a pretext to gain information on the armed robbery charge.
¶23. Hopson's argument rests on his claim that the intimidation investigation was related to the armed robbery charge because both matters involved the same victim/witness and Hopson was seeking to influence the outcome of the robbery charge when he approached Mahan. Therefore, based on State v. Badker, 2001 WI App 27, 240 Wis. 2d 460, 623 N.W.2d 142, Hopson argues that police were required to notify his attorney or advise him that his counsel should be present. We reject his argument.
¶24. Obviously these charges are related in the sense that the second would not have occurred without the first. That, however, is not the standard controlling resolution of the issue. In order to determine whether crimes are directly related, no single factor controls. Id., ¶21. Rather, we consider "the persons involved, the types of offenses, the locations of the crimes, and the time each was committed." Id. (citation omitted).
¶25. Here, both crimes involved the same person-Mahan. The remaining factors, however, are different. Clearly, the armed robbery and the intimidation charge are distinct types of offenses. Each charge consists of a different offense that would need to be proven separately. The offenses of armed robbery and intimidating a witness contain no common elements. Likewise, both crimes occurred at different times and different locations. The armed robbery occurred on July 10, 2001, in downtown Milwaukee. The intimidation occurred weeks later after Hopson was charged with the armed robbery. Based on this analysis, we conclude that the intimidation charge was not directly related to the armed robbery and, therefore, the January interrogation did not violate Hopson's Sixth Amendment right to counsel. Thus, the trial court did not err in denying the suppression motion on this ground.[2]

C. Court's Discretion in Sentencing.
¶26. Hopson claims that the trial court erroneously exercised its discretion when it sentenced him to what he claims constitutes an excessive sentence. Hopson claims that the sentencing court must at least consider the following three primary factors in imposing sentence: the character and rehabilitative needs of the offender, the need for protection of the public, and the gravity and nature of the offense. The defense includes facts regarding these factors, such as Hopson's troubled youth, his good sense of humor, and his remorse for the crime, and states that these factors should have merited more weight in the case, which would have resulted in a lesser period of confinement. Hopson states that a court is required to review and set forth on the record those factors and the weight assigned to such factors that influence and formulate its sentencing decision. He claims that the sentencing decision was vague and its conclusion is without support. We are not persuaded.
¶27. Hopson has the burden of showing that the sentencing court relied on some unreasonable or some unjustifiable basis in imposing sentence. State v. Lechner, 217 Wis. 2d 392, 418, 576 N.W.2d 912 (1998). A trial court's exercise of erroneous discretion is found under three circumstances: (1) it fails to state on the record relevant and material factors that influenced its decision; (2) it relies upon factors which are totally irrelevant or immaterial to the type of decision to be made; (3) or it assigns too much weight to one factor in face of other contravening considerations. State v. Panknin, 217 Wis. 2d 200, 208, 579 N.W.2d 52 (Ct. App. 1998). The record reflects that the trial court's sentence did not constitute an erroneous exercise of discretion.
¶28. A defendant who agrees to a recommended sentence is judicially estopped from claiming his sentence is a result of an erroneous exercise of discretion. State v. Magnuson, 220 Wis. 2d 468, 471-72, 583 N.W.2d 843 (Ct. App. 1998); see also State v. Scherreiks, 153 Wis. 2d 510, 518, 451 N.W.2d 759 (Ct. App. 1989) (a defendant who affirmatively approves his sentence cannot attack it on appeal). That is exactly what Hopson did here.
¶29. Although Hopson claims that he wanted a sentence less than what trial counsel had recommended, he provides no citation to the record to support that proposition. The State recommended a sentence of twelve years' imprisonment, consisting of eight years' confinement and four years' extended supervision on the armed robbery charge, and recommended a concurrent sentence of four years' imprisonment, consisting of two years' confinement and two years' extended supervision for the charge of felon in possession of a firearm. Hopson did not object to these recommendations or to his counsel's statement that he joined in this recommendation. The trial court here imposed the exact sentence jointly recommended by the State and the defense. Moreover, Hopson signed a plea questionnaire that included those identical sentencing terms. Accordingly, Hopson is estopped from attacking the sentence in this appeal.
¶30. Even if Hopson had not agreed to the sentence, it is clear that the sentence imposed was not an erroneous exercise of discretion. A trial court may review its sentence for erroneous exercise of discretion if it concludes that the sentence was unduly harsh or unconscionable. See State v. Krueger, 119 Wis. 2d 327, 351 N.W.2d 738 (Ct. App. 1984). However, a trial court cannot change a sentence simply upon reconsideration; it must be convinced that it originally committed some error in exercising discretion during the course of the original sentencing process, ignored relevant considerations and determined whether such were communicated effectively on the record. In imposing sentence, a trial court is presumed to have been reasonable because it is best suited to consider relevant factors concerning the defendant and demeanor. State v. Echols, 175 Wis. 2d 653, 682, 499 N.W.2d 631 (1993).
¶31. Here, the trial court clearly considered the offender's character, the need for protection of the public, and the gravity and nature of the offense. At the time of sentencing, Hopson could have been sentenced to eighty-one years on the two counts to which he pled guilty. The trial court, however, did not impose the maximum and, in fact, credited Hopson's intelligence and potential; it found that Hopson could do something constructive with his life. The trial court stated on the record the factors that influenced its decision, it relied on only material and relevant factors, and it did not assign too much weight to one factor. Rather, the trial court applied the pertinent sentencing factors to the material facts and reached a reasonable decision. Therefore, this court concludes that the trial court acted reasonably in imposing the sentence recommended by the State, agreed to by defense counsel, and specifically agreed to by Hopson himself.

D. Motion for Postconviction Relief.
¶32. Hopson claims that the trial court failed to exercise discretion in denying his postconviction motion. He argues that the order denying his motion was simply a cursory recitation of the primary sentencing factors and did not contain any specific reasons for rejecting his contention that his sentence was unduly harsh. We reject Hopson's contention.
¶33. Hopson's argument on the motion for postconviction relief adds nothing to his argument on sentencing. The trial court did not err when it imposed the sentence that Hopson had agreed to. Accordingly, it did not err when it denied Hopson's postconviction motion.
By the Court. Judgment and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Hopson also contends that his Sixth Amendment right was violated relative to the August 6, 2001 interview. He states that prior to that interview he had "at some point" contacted the state public defender for counsel regarding his probation revocation on an unrelated matter. Hopson does not allege that he actually had counsel at the time of the August 6, 2001 interview; rather, he contends that the officers who interviewed him knew he was in custody on a pending matter and should have presumed that Hopson had counsel representing him. Hopson complains that the trial court never made any findings on the fact that he was on probation on the day of the first interview, and allegedly had contacted the SPD. However, Hopson does not explain why the trial court should have made any such findings, or even mentioned those circumstances, since they were not brought to the court's attention at all, either by Hopson's motion, or at the hearing. Hopson has presented no facts, either to the trial court or to this court, in support of his argument that the August 6, 2001 questioning violated his Sixth Amendment right to counsel.