# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2018AP2319-CR |

†Petition for Review filed

Complete Title of Case:

**STATE OF WISCONSIN,**

      **PLAINTIFF-RESPONDENT,†**

   **V.**

**MANUEL GARCIA,**

      **DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | October 7, 2020 |
| Submitted on Briefs: | January 22, 2020 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Gundrum, J. |
|   Concurred: | |
|   Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the brief of *Russell D. Bohach* of *Russell D. Bohach Attorney at Law*, Wauwatosa and the supplemental brief of *Sean Bosack* and *Emma Jewell* of *Godfrey & Kahn, S.C.*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief and the supplemental brief of *John A. Blimling*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 7, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2319-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2010CF365**

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

MANUEL GARCIA,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Racine County: MICHAEL J. PIONTEK, Judge. *Reversed and cause remanded.*

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶1 REILLY, P.J. The issue presented is clear and straightforward: may the State invoke the impeachment exception to the exclusionary rule during the State's case-in-chief to "rehabilitate" one of its witnesses? We conclude that under *Harris v. New York*, 401 U.S. 222 (1971), *James v. Illinois*, 493 U.S. 307 (1990),

and their progeny, the State may not utilize a defendant's voluntary statement, taken in violation of ***Miranda v. Arizona***, 384 U.S. 436 (1966),[1] during its case-in-chief. We reverse as the impeachment exception applies only to the specific circumstance where a *defendant* testifies contrary to statements he or she made within an inadmissible statement.

## FACTS

¶2    Manuel Garcia appeals from a judgment convicting him of first-degree reckless homicide and an order denying his postconviction motion. Garcia was charged with and found guilty by a jury of first-degree reckless homicide in the death of his girlfriend's two-year-old son who died of "blunt trauma to the

---

[1] "[O]ur constitutional protection against self-incrimination is called to duty whenever the State interrogates a suspect in police custody" and "is one of the nation's 'most cherished principles.'" ***State v. Harris***, 2017 WI 31, ¶¶11-12, 374 Wis. 2d 271, 892 N.W.2d 663 (citing ***Miranda v. Arizona***, 384 U.S. 436, 458, 478-79 (1966)). While in police custody and prior to conducting an interrogation, agents of the state are required "to formally instruct the suspect of his [or her] constitutional rights and then conduct themselves according to how he [or she] elects to preserve or waive them." *Id.*, ¶13.

> He [or she] must be warned prior to any questioning that he [or she] has the right to remain silent, that anything he [or she] says can be used against him [or her] in a court of law, that he [or she] has the right to the presence of an attorney, and that if he [or she] cannot afford an attorney one will be appointed for him [or her] prior to any questioning if he [or she] so desires. Opportunity to exercise these rights must be afforded to him [or her] throughout the interrogation. After such warnings have been given, and such opportunity afforded him [or her], the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him [or her].

*Miranda*, 384 U.S. at 479; *see also* ***Harris***, 374 Wis. 2d 271, ¶¶13-14.

abdomen." During a custodial police interrogation, and after signing a waiver of rights form, Garcia confessed that he struck the child multiple times and threw the child onto a mattress.[2] Upon motions, and following *Miranda*/*Goodchild*[3] hearings, the court found that Garcia's statements were voluntary but not knowing, as Garcia, not a native English speaker, did not understand his *Miranda* rights when he waived them.[4] The court denied the State's request to use Garcia's statements at trial in its case-in-chief.

---

[2] The record does not contain either the DVD or the transcript of Garcia's statement. A supplementary incident report created by law enforcement indicates that Garcia admitted to being very angry with the child's behavior and he "threw [the child] onto the mattress on the floor where he sleeps" and "punched him one time, and then threw him back on the mattress." Garcia's first appellate counsel had a responsibility to ensure completion of the appellate record. *See State v. McAttee*, 2001 WI App 262, ¶5 n.1, 248 Wis. 2d 865, 637 N.W.2d 774. The DVD/transcript is not determinative given our conclusion of law.

[3] Our supreme court has explained that

> [t]he hearings considering the admissibility of confessions are known as *Miranda-Goodchild* hearings after *Miranda v. Arizona*, [384 U.S. 436 (1966)], and *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965). As a rule, the hearings are designed to examine (1) whether an accused in custody received *Miranda* warnings, understood them, and thereafter waived the right to remain silent and the right to the presence of an attorney; and (2) whether the admissions to police were the voluntary product of rational intellect and free, unconstrained will.

*State v. Jiles*, 2003 WI 66, ¶25, 262 Wis. 2d 457, 663 N.W.2d 798.

[4] The Honorable Wayne J. Marik originally ruled on the admissibility of the confession. Prior to trial, the Honorable Michael J. Piontek was assigned to the case. Judge Piontek reviewed Judge Marik's ruling in the context of Garcia's motion in limine, which asked that the State be prohibited from having any witnesses testify directly or indirectly as to Garcia's confession. In reviewing Judge Marik's decision, Judge Piontek noted that there was no finding of misconduct by the police and that "Mr. Garcia made a voluntary statement." Neither Judge Marik's nor Judge Piontek's rulings on these issues are being challenged on appeal.

¶3      The investigating officer testified at trial regarding his investigation without any discussion of Garcia's custodial statements.  The officer had been told by Garcia at the hospital that the child had injuries from two accidents in the week prior to the child's death:  slipping on some stairs and jumping out of a vehicle.[5]  On cross-examination, trial counsel questioned the officer at length as to why the officer did not investigate other ways, aside from the stairs and the vehicle, that the child may have been injured.  In response to these questions, the State moved the court to allow the officer to be rehabilitated by utilizing Garcia's excluded statements to explain why the officer did not investigate other incidents, to wit, he did not continue his investigation as Garcia confessed to hitting and throwing the child during his custodial interrogation.  The State argued that counsel had "opened the door to the confession."

¶4      The court granted the State's request on the ground that while Garcia's cross-examination was proper, it was likely to mislead the jury if the State could not rebut Garcia's implication that the officer did not do a full investigation.[6]  A portion of Garcia's videotaped statements were shown to the jury in which Garcia admitted to punching and throwing the child.  In response, trial counsel argued that Garcia was being forced to testify:  "[G]iven the Court's previous ruling earlier today … I will have to put Mr. Garcia on the stand to explain many of the things that came up during his statements….  [Garcia] feels that he now is in a position where he must testify."  Garcia's testimony centered on explaining that he did not understand the difference between the word "punch" and "spank" due to English not being his

---

[5] There is no dispute that these were non-custodial statements by Garcia and properly admitted as evidence.

[6] The circuit court took the matter under advisement, ordered a copy of the transcript of trial counsel's cross-examination, and issued its ruling the next morning.

primary language and that he only "spank[ed]" the child as a form of punishment on his back, butt, or side. Garcia testified that he never touched the child in the stomach/abdomen and never punched him with a closed fist. The officer testified that Garcia never "directly" told him that he touched the child in the abdomen.

¶5 The jury found Garcia guilty of first-degree reckless homicide and he received a lengthy prison sentence. Garcia filed a postconviction motion arguing that the circuit court erred when it allowed Garcia's confession to be used during the State's case-in-chief and, in the alternative, that trial counsel failed to provide effective assistance of counsel in its cross-examination of the investigating officer.[7] The circuit court denied the motion without a hearing. Garcia appeals.[8]

¶6 On appeal, Garcia argues that the circuit court violated his constitutional rights when it allowed the State, during its case-in-chief, to introduce his previously excluded and inadmissible statements for the purpose of rehabilitating one of its witnesses. The State counters that "when a defendant seeks to use the exclusion of his inculpatory statements from the State's case-in-chief to mislead the jury about the nature of a police investigation, the rule established in *Harris* and its progeny permits the trial court to admit the confession during the State's case-in-chief in order to rehabilitate a witness."[9] As we conclude that *Harris*

---

[7] Garcia does not reassert his ineffective assistance of counsel claim on appeal. We, therefore, deem it abandoned. *Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981).

[8] We ordered supplemental briefing and scheduled oral argument in this case. In the interim, Garcia's appointed counsel withdrew from representation for good cause, and new counsel was appointed. Due to the COVID-19 pandemic, oral argument was delayed, and after reviewing the supplemental briefs, this court determined that oral argument was no longer necessary, and it was not rescheduled.

[9] The State, in its supplemental brief, concedes that the rule of completeness, codified in WIS. STAT. § 901.07, "does not control the outcome in this case." We deem any argument on the rule of completeness waived.

and its progeny do not allow the State to use the impeachment exception to rehabilitate its own witness during its case-in-chief, we reverse.

## STANDARD OF REVIEW

¶7    Although determinations regarding the admission of evidence at trial are issues generally "left to the discretion of the circuit court," *State v. Dunlap*, 2002 WI 19, ¶31, 250 Wis. 2d 466, 640 N.W.2d 112, the parties agree that the standard of review for claims of constitutional error is applicable under the circumstances.[10]    With respect to constitutional claims, we "employ a two-step process." *State v. Harris*, 2017 WI 31, ¶9, 374 Wis. 2d 271, 892 N.W.2d 663; *State v. Martwick*, 2000 WI 5, ¶16, 231 Wis. 2d 801, 604 N.W.2d 552. "First, we review the circuit court's factual findings and uphold them unless they are clearly erroneous." *Harris*, 374 Wis. 2d 271, ¶9.    Second, we "independently apply constitutional principles to those facts" to determine whether there was a constitutional violation. *State v. Hogan*, 2015 WI 76, ¶32, 364 Wis. 2d 167, 868 N.W.2d 124; *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120.    In this case, Garcia does not dispute the underlying facts; therefore, only the second step is at issue.

## DISCUSSION

¶8    We allow illegally obtained evidence to be introduced at trial only under narrow exceptions and specific circumstances, and the impeachment exception under *Harris* does not allow the introduction of a statement obtained in

---

[10] The State, in its supplemental brief, indicated that it "described the standard of review for circuit courts' discretionary decisions based on Garcia's framing of the issue [in his brief-in-chief].  To the extent this Court resolves this case on constitutional grounds, the standard of review differs from that discussed in the parties' previous briefs."

violation of *Miranda* during the State's case-in-chief to rehabilitate the State's witness. The impeachment exception to the exclusionary rule applies only to the defendant's testimony.

¶9 Statements obtained in violation of *Miranda* are normally inadmissible. *Miranda*, 384 U.S. at 478-79; *see also State v. Knapp*, 2003 WI 121, ¶¶111-14, 265 Wis. 2d 278, 666 N.W.2d 881, *vacated and remanded by* 542 U.S. 952 (2004), *reinstated in material part by* 2005 WI 127, ¶2 n.3, 285 Wis. 2d 86, 700 N.W.2d 899. However, "[a] statement of the defendant made without the appropriate *Miranda* warnings, although inadmissible in the prosecution's case-in-chief, may be used to impeach the defendant's credibility if the defendant testifies to matters contrary to what is in the excluded statement." *State v. Mendoza*, 96 Wis. 2d 106, 118, 291 N.W.2d 478 (1980) (collecting cases); *see also Michigan v. Harvey*, 494 U.S. 344, 345-46, 350-51 (1990) ("We have already decided that although statements taken in violation of only the prophylactic *Miranda* rules may not be used in the prosecution's case in chief, they are admissible to impeach conflicting testimony by the defendant."); *Harris*, 401 U.S. at 223-26; *State v. Franklin*, 228 Wis. 2d 408, 412-16, 596 N.W.2d 855 (Ct. App. 1999). This impeachment exception is applicable only if the excluded statements are found to have been made voluntarily.[11] *Mendoza*, 96 Wis. 2d at 118-19; *see also Franklin*, 228 Wis. 2d at 412.

¶10 The impeachment exception as it applies to statements made in violation of *Miranda* was first introduced by the United States Supreme Court in

---

[11] "Whether a statement is voluntary or involuntary depends on whether it was compelled by coercive means or improper police practices." *State v. Franklin*, 228 Wis. 2d 408, 413, 596 N.W.2d 855 (Ct. App. 1999). Here, as addressed above, the circuit court concluded that Garcia's confession was voluntarily made, but not knowing and intelligent.

*Harris*.  There, after the defendant testified at trial in his own defense and denied all the charges, he was impeached with statements he made to the police without being provided *Miranda* warnings.  *Harris*, 401 U.S. at 223-24.  The *Harris* Court upheld the trial court's impeachment exception ruling, explaining that

> *Miranda* barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel.  It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards.

*Harris*, 401 U.S. at 224.  An exception, the Court concluded, was admission of the statements where the defendant commits perjury[12]:

> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so.  But that privilege cannot be construed to include the right to commit perjury….
>
> The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.

---

[12] The Court in *Harris v. New York*, 401 U.S. 222, 224 (1971), relied on its previous holding in *Walder v. United States*, 347 U.S. 62, 66 (1954), a Fourth Amendment case, where the Court carved out a narrow exception to its earlier holding in *Agnello v. United States*, 269 U.S. 20, 35 (1925), that illegally seized evidence must be excluded for all purposes.  The *Walder* Court created an exception, which allows the government to introduce unlawfully seized *physical* evidence in the specific circumstance where a defendant offers contrary (perjured) testimony so as to impeach the credibility of the defendant:  "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained.  It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths."  *Walder*, 347 U.S. at 65.  The *Walder* physical evidence impeachment exception was extended by *Harris* to statements made in violation of *Miranda*.

*Harris*, 401 U.S. at 225.[13]

¶11     The United States Supreme Court revisited the impeachment exception nineteen years later in *James*.  James was a suspect in a murder, and police arrested him at a hair salon while he was in the process of altering his appearance.  *James*, 493 U.S. at 309.  James told officers that "the previous day his hair had been reddish brown, long, and combed straight back" and that "he had gone to the [hair salon] in order to have his hair 'dyed black and curled in order to change his appearance.'"  *Id.*  James' statements to police were suppressed as fruits of an unlawful arrest.  *Id.* at 309-10.  At trial, James did not testify, but a family friend testified for the defense that on the day of the shooting James' hair had been black, not reddish as witnesses said it was on the day of the crime.  *Id.* at 310.  The State argued that the impeachment exception should be extended to defense witnesses, and the trial court, over James' objection and after determining that the suppressed statements were voluntary, permitted the prosecution to offer James' suppressed statements to impeach his friend's credibility.  *Id.*

¶12     The Court reversed and refused to extend the impeachment exception to "defense witnesses."  *Id.* at 313.  The Court explained that the impeachment exception is appropriate as a way to prevent a *defendant* from "perverting the exclusionary rule 'into a license to use perjury by way of a defense.'"  *Id.* at 313 (quoting *United States v. Havens*, 446 U.S. 620, 626 (1980)).  The Court provided

---

[13] The holding of *Harris* has also been applied in other similar circumstances.  *See, e.g.*, *Michigan v. Harvey*, 494 U.S. 344, 345, 351 (1990) (allowing statement to police taken in violation of Sixth Amendment right to counsel to be used to impeach defendant's testimony); *United States v. Havens*, 446 U.S. 620, 627 (1980) (applying impeachment exception to illegally seized evidence used to impeach the defendant's credibility as to statements he made on cross-examination); *Oregon v. Hass*, 420 U.S. 714, 722-24 (1975) (applying impeachment exception where defendant was given *Miranda* warnings but failed to honor his invocation of the right to counsel and he subsequently made incriminating statements).

two reasons for refusing to extend the impeachment exception to witnesses beyond the defendant: (1) "the mere threat of a subsequent criminal prosecution for perjury is far more likely to deter a witness from intentionally lying on a defendant's behalf than to deter a defendant, already facing conviction for the underlying offense, from lying on his own behalf," and (2) expanding the exception to all defense witnesses "likely would chill some defendants from presenting their best defense and sometimes any defense at all—through the testimony of others." *Id.* at 314-15. The Court was concerned that if the exception was extended beyond just the defendant that a defendant would fear that a defense witness, "in a position to offer truthful and favorable testimony, would also make some statement in sufficient tension with the tainted evidence to allow the prosecutor to introduce that evidence for impeachment." *Id.* at 315. The Court concluded that "[s]o long as we are committed to protecting the people from the disregard of their constitutional rights during the course of criminal investigations, inadmissibility of illegally obtained evidence must remain the rule, not the exception." *Id.* at 319.

¶13    Two years later, the Eastern District of Wisconsin decided ***Kuntz v. McCaughtry***, 806 F. Supp. 1373 (E.D. Wis. 1992), a federal habeas case, which presented a similar issue to the one before this court. There, the government and the courts assumed that Kuntz's interrogation constituted a violation of his rights under ***Miranda*** and ***Edwards***,[14] but Kuntz's statements were found to be voluntary and trustworthy. ***Kuntz***, 806 F. Supp. at 1378. The illegally obtained statements

---

[14]    ***Edwards v. Arizona***, 451 U.S. 477 (1981).

were then used at trial to impeach the state's witness, who was a friend of Kuntz.[15]

*Id.* at 1379. The court concluded that the admission of the illegally obtained

statement was in error. According to the *Kuntz* court:

> Evidence that has been illegally obtained "is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt." [*Havens*, 446 U.S. at 628]. Under *Havens*, use of an illegal statement is thus prohibited during any part of the state's case, even if used to impeach its own witness. If impeachment of other defense witnesses by use of an illegally obtained statement is prohibited, as it is under *James*, use of the statement to impeach *prosecution* witnesses is foreclosed *a fortiori*. The Court's concern in *James* was the chilling effect on presentation of other defense witnesses. That concern about a fair trial is magnified in regard to prosecution witnesses. Allowing the prosecution to use the illegal statement during the presentation of its case—even if used to impeach its own witness—would virtually negate the exclusionary rule altogether. The prosecution would have free reign to present witnesses just for their impeachment value in order to get the illegal statement before the jury. Although defendants should not be able to "'pervert' the exclusion of illegally obtained evidence into a shield for perjury,… it seems no more appropriate for the State to brandish such evidence as a sword…." *James*, [493 U.S. at 317].

*Kuntz*, 806 F. Supp. at 1380. The court determined "under the rules and reasoning

of *Harris* and *James*, impeachment use of an illegal statement *is allowed against*

*the defendant alone*." *Kuntz*, 806 F. Supp. at 1380 (emphasis added); *see also*

---

[15] The *Kuntz* case began in our state courts. *See State v. Kuntz* (*Kuntz I*), No. 88-1565-CR, unpublished slip op. at *9-11 (WI App Dec. 21, 1989) (agreeing with the state and reading *Harris* to mean that defendant's statements to police may be used to attack the veracity of "any witness," but acknowledging that the United States Supreme Court had just heard oral arguments in *James*, and determining that even if the *James* Court disagreed, harmless error applied). On appeal, our supreme court did not reach the issue, concluding instead that "nothing in the illegally obtained statement of the defendant that was admitted contradicts [the state's witness'] testimony or calls into question her credibility" and it was at most "cumulative" and "harmless beyond a reasonable doubt." *State v. Kuntz* (*Kuntz II*), 160 Wis. 2d 722, 744, 467 N.W.2d 531 (1991); *see also Kuntz v. McCaughtry*, 806 F. Supp. 1373, 1379-80 (E.D. Wis. 1992). Kuntz subsequently filed a petition for a writ of habeas corpus in federal district court.

*Smiley v. Thurmer*, 542 F.3d 574, 579 n.2 (7th Cir. 2008) ("The Supreme Court has limited the impeachment exception to *Miranda*, first articulated in [*Harris*], to situations in which *the defendant elects to testify at trial*." (emphasis added; collecting cases)).[16]

¶14 It is on this basis that we conclude that a defendant's statements obtained in violation of *Miranda* may be used to impeach only the defendant's testimony, and, accordingly, may not be used during the State's case-in-chief. The State presents no case law holding to the contrary. Instead, the State argues that "[a] multitude of courts … have expanded the lessons of *Harris* to other situations," suggesting that if we are engaged in a search for the truth and if a statement is reliable (voluntary and uncoerced), then *Harris* allows the impeachment exception to be used during the State's case-in-chief. We disagree. *Harris*, *James*, and their progeny all hold that the impeachment exception is allowed only as to the defendant.

¶15 The State offers "fairness" as its basis to overcome the holdings in *Harris* and *James* and points to *State v. Brecht*, 143 Wis. 2d 297, 421 N.W.2d 96 (1988),[17] to support its fairness argument. The State argues that under *Brecht*, Garcia "opened the door" to admitting his statement by counsel's cross-examination

---

[16] Courts have made a narrow exception to the *Harris*/*James* rule in cases where the defendant uses an insanity defense. In these types of cases, the psychiatrist's testimony/opinions are based on statements made to him or her by the defendant; therefore, the statements that are actually being impeached are those of the defendant and not the witness. *See United States v. Rosales-Aguilar*, 818 F.3d 965, 970 (9th Cir. 2016); *Wilkes v. United States*, 631 A.2d 880, 889-90 (D.C. 1993).

[17] In *State v. Brecht*, 143 Wis. 2d 297, 307-08, 313, 421 N.W.2d 96 (1988), the issue was whether Brecht's constitutional rights were violated by the state's elicitation of testimony from a police officer pertaining to Brecht's pre-*Miranda* silence during the state's case-in-chief. Our supreme court allowed the testimony as counsel had "opened the door" to the evidence when counsel raised the issue of Brecht's silence on cross-examination; accordingly, the state was free to elicit the testimony on redirect. *Id.* at 313-14. We distinguish *Brecht* as the case did not involve statements excluded in violation of *Miranda*, nor did the court address *Harris*.

of the police officer. *See id.* at 313. According to the State, "***Brecht*** mentioned the permissibility of a comment on the defendant's silence when it was a 'fair response to a claim made by defendant or his counsel,'" *see id.* at 314 (citation omitted), and "fairness" was a concern to the Court in both ***Harris*** and ***James***. We agree that "fairness" is a concern, but we also recognize that ***Harris***, ***James***, and their progeny all considered "fairness" in coming to the categorical conclusion that fairness and constitutional concerns dictated that the impeachment exception may only be used against the defendant when the defendant testifies contrary to his or her inadmissible, but voluntary statement.

¶16 While the State acknowledges that ***Harris/James*** prohibits the use of the impeachment exception against defense witnesses and acknowledges the ***Kuntz*** decision, it argues that the "lesson" of "all these cases" is that we have "four primary concerns" when dealing with the admissibility of previously excluded evidence: (1) is the evidence reliable; (2) does admission of the evidence ensure proper deterrence against government misconduct; (3) does the admissibility of previously excluded evidence stem from something in the defendant's control so as not to preclude the defendant from presenting his best case; and (4) does the evidence serve the court's fact finding function. If the evidence meets these criteria, argues the State, then the evidence should be admitted. The State does not cite any case applying its four-part test. The State's policy argument may have merit, but we are obligated to follow precedent rather than make new law. We are an error correcting court, not a policy making court. ***Harris***, ***James***, and their progeny allow the narrow impeachment exception to be used only in the specific circumstance where a defendant testifies contrary to an earlier voluntary, but inadmissible statement.

13

# CONCLUSION

¶17  Garcia's inadmissible statement was not admitted in response to Garcia's testimony; Garcia's statement was admitted during the State's case-in-chief in order to rehabilitate a prosecution witness in response to relevant and proper cross-examination by defense counsel.  The circuit court erred in admitting Garcia's statements, and Garcia is entitled to a new trial.[18]

*By the Court.*—Judgment and order reversed and cause remanded.

---

[18]  While there is a "limited class" of constitutional errors that are considered "structural," which require "automatic reversal," "most constitutional errors can be harmless." ***Neder v. United States***, 527 U.S. 1, 8 (1999) (citation omitted).  The error complained of here is subject to a harmless error analysis. *See* ***Kuntz***, 806 F. Supp. at 1380-81; ***Kuntz II***, 160 Wis. 2d at 744.  The harmless error test is

> whether there is a reasonable possibility that the error contributed to the conviction.  If it did, reversal and a new trial must result.  The burden of proving no prejudice is on the beneficiary of the error, here the state.  The state's burden, then, is to establish that there is no reasonable possibility that the error contributed to the conviction.

***State v. Alexander***, 214 Wis. 2d 628, 652-53, 571 N.W.2d 662 (1997) (quoting ***State v. Dyess***, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985)).  Here, the State, as the beneficiary of the error, carried the burden.  The State failed to address harmless error in either its response or supplemental briefs and, therefore, failed to meet its burden.  We conclude that the error in admitting Garcia's statements at trial was not harmless.